ELLIS, Judge:
Plaintiff Arline J. Gill brings this suit for damages arising out of the death of her son, Don Carlos Smith, III, who drowned in a municipal swimming pool operated by the City of Morgan City on June 11, 1968. Defendant is United States Fidelity and Guaranty Company, the public liability insurer of the City of Morgan City. From an adverse judgment, the plaintiff has appealed.
The evidence in the record reveals that Don Carlos Smith, III, was taken to the pool by his mother at about 4:30 p.m. She paid 25 cents admission fee for him, admonished him not to go into the deep end of the pool, saw him enter the shallow end, and left to visit a friend.
The pool is 60 feet wide and 150 feet long, and runs approximately north and south longitudinally. The deep end of the pool occupies the north one-third thereof and is separated from the shallow end by a rope stretched across the pool at the five foot depth marker. There is a life guard stand located on the east side of the pool about ten feet north of the rope. A second stand is located on the west side of the pool at about its middle, and a third at the shallow or south end thereof. All three stands were manned on the day in question.
At about 4:55 p.m., the life guards began to clear the pool, which was to close at 5:00 p.m. At that time, the deep end life guard testified that he walked out on one of the diving boards, checked the bottom of the deep end and observed nothing out of the ordinary. After the • pool was cleared, another life guard went out on the diving board nearest the deep end life guard stand, and observed the body of Don Carlos Smith, III, at the bottom of the pool. He immediately dove in and pulled him out, but all efforts to resuscitate him were unavailing. The record reveals that the boy’s lungs were full of water, and medical evidence is to the effect that he would have died within two minutes of the time he breathed in the water. Young *438 Smith was nine and one-half years old at the time of his death, and was unable to swim. He was not noticed by any of the life guards between the time he entered the pool and the time his body was discovered.
The evidence in the case is to the effect that the water in the pool was clear, the pool was not overcrowded, and no inattentiveness or dereliction of duty is shown on the part of any of the life guards.
In finding for the defendant, the district judge found the doctrine of res ipsa loqui-tur to be inapplicable. He further found that at least two of the life guards should have seen the body of the deceased prior to its discovery, and that they were negligent in failing to do so. However, he found that the failure to discover the body sooner was not shown to be causally connected with the death.
We disagree with his conclusion in this respect, because it is based on the assumption that the body was there to be found, which is not borne out by the record.
Plaintiff claims the benefit of the doctrine of res ipsa loquitur. In the case of Rome v. London & Lancashire Indemnity Co. of America, 169 So. 132 (Orl., La.App. 1936), in discussing the applicability of the doctrine to a similar drowning case, the court said:
“It will be observed that in order to invoke the doctrine two essential elements must concur:
“(1) The thing which caused the injury must be under the control and management of the defendant, and
“(2) The accident must be such as, in the ordinary course of things, does not happen if those who have its management or control use the proper care.
“There are many exceptions to the rule and the decisions have not been entirely in accord in its application, the court, in each case, being guided by the particular accident in question.
“(10) As an abstract proposition it would seem that the mere fact that a young boy, who could not swim, was drowned in a swimming pool is not such an unusual occurrence from which could be drawn an inference or presumption of negligence on the part of the pool proprietors. In the case at bar, however, this young boy was a paid patron of the swimming pool. For the price of 25 cents he was given a bathing privilege. The owners of the pool had the onus of protecting him from injury, and they recognized this obligation by employing life guards, whose duties were to protect his life and the lives of others who entered the pool. It was also the obligation of the pool operators to have a sufficient number of life guards employed, so that this little boy and other children could be watched with reasonable care, and not to allow more persons to bathe in the pool than could be successfully protected by the operators’ employees.
“(11) Keeping in mind the burden placed upon the proprietors of the swimming pool by virtue of their contractual undertaking, the little boy bathes in that pool and is drowned without the life guards seeing him or knowing whether or not he was in distress, notwithstanding that the portion of the pool in which he was drowned is located at a point not over 15 or 20 feet from one of the life guard stations.
“Under these circumstances, we are of the opinion that a presumption of negli.gence arises against the proprietors of the pool, in that, if the life guards had been doing their duty and had been attentive, they would have discovered the presence of the boy in peril.
“A presumption of fault, on the part of the owner, does not arise merely because a person is drowned in his swimming pool. But where a person is drowned in a pool policed by life guards supplied by the owner under a contract with the deceased, and those guards have failed to see the drowned person in distress, either *439 because of the fact that the pool was overcrowded, or because they were not alert and vigilant in the exercise of their duties, then, in such case, it will be presumed that if the life guards had been attending to their task, they would have discovered the peril in time to rescue the life.”
In that case, the court found that the swimming pool was overcrowded, there were not sufficient life guards on duty, and that one of the life guards was inattentive to his duty at the time of the drowning.
We gather from the foregoing that it is not the holding of the Rome case, supra, that the doctrine of res ipsa loquitur, as explained therein, is applicable. Rather, the court held that, if it is shown that there exist conditions inimicable to the proper operation of a public swimming pool, such as overcrowding or inattentiveness to duty on the part of the life guards, it will be presumed that, absent these deficiencies, the life guards would have discovered the peril of the deceased and rescued him.
In this case, however, there is no showing of improper management of the pool, and it is affirmatively shown that the pool was not overcrowded. There is nothing to indicate any dereliction of duty on the part of the life guards. As pointed out in the Rome case, supra, no presumption of fault arises from the fact of a drowning. We are not told when and under what circumstances the drowning occurred, or in what part of the pool. It could have happened just as easily only minutes before the body was discovered as at any other time, and at a time when the attention of the life guard was legitimately directed to the carrying out of his duties in some connection other than observing the bottom of the pool. Under all of the circumstances of this case, we find that plaintiff has not borne the burden of proof required by law. We find that plaintiff must show some dereliction of duty on the part of the owner of the pool, or his employees, which might have prevented the timely discovery of the peril of the deceased. In such a case, a presumption of negligence arises which must be rebutted by the owner if he is to escape liability.
The judgment appealed from is therefore affirmed, at plaintiff’s cost.
Affirmed.