Chuck G. **WONG,** Administrator of the Estate of Peter Wong, and Chuck G. Wong, Individually, **Appellant,**

v.

**WATERLOO COMMUNITY SCHOOL DISTRICT, Appellee.**

No. 56012.

Supreme Court of Iowa.

Sept. 17, 1975.

866

Walter W. Rothchild and Frederick G. White, Waterloo, for appellant.

George Lindeman, Waterloo, for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, REYNOLDSON and HARRIS, JJ.

LeGRAND, Justice.

This is an action brought by plaintiff as administrator of the estate of his minor son, Peter Wong, asking damages for the child's wrongful death by drowning. Plaintiff also sought to recover for his own individual loss of services occasioned by this tragic accident. The jury found for defendant, disallowing both the administrator's claim and the claim of the parent individually. He appeals, and we affirm the trial court.

We refer throughout this opinion to the plaintiff in his capacity as administrator of his son's estate. However, what we say applies equally to his own claim.

On July 17, 1970, Peter Wong, 11 years old, was drowned while participating in a swimming class conducted under the auspices of the Waterloo Community School District. The boy, a student at Longfellow School in Waterloo, enrolled in a summer school program which included a series of six swimming periods held at McKinstry Junior High School in that city. Defendant school district had full responsibility for this course, although it was funded under a grant from the federal government. The swimming classes were supervised by employees of the defendant, including both classroom teachers and lifeguards.

The evidence shows that Peter attended all six of the swimming classes. His death occurred during the last session. On two occasions he had not suited up but had remained outside the pool, probably because of his fear of water.

The pool is 60 feet long and 20 feet wide. At the time of the drowning, there were approximately 17 youngsters in the pool. They ranged in age from 9 to 12 years. Most of them, including Peter, were unable to swim.

The class was under the supervision of Roger Tropf, a school teacher who was not certified as a swimming instructor or as a lifeguard. In addition to Mr. Tropf, others exercising supervisory authority over the class were Jack Hilton, a teacher but not a certified lifeguard; Emily Ott, who held a junior lifesaving certificate; Debbie Silkwood, who held a safety instructor's certificate; Susan Evely, a classroom teacher who remained outside the pool and took no part in the swimming supervision; Carol Hanson, a 15-year-old teacher's aide, who held a junior lifesaving certificate; and Susan Rowe, whose status is not shown.

The Wong boy was last seen alive in the shallow end of the pool at approximately 10:40 A.M. Sometime later his body was discovered in the deep end of the pool. Artificial respiration was attempted, both by those present and, later, by the Waterloo Fire Department inhalator squad. All efforts to revive the boy failed.

No one saw Peter go to the deep end of the pool. There was no explanation as to how or when he left the shallow end nor as to the circumstances under which he met his death.

Plaintiff's action was pled both upon allegations of specific negligence and, by separate count, as a *res ipsa loquitur* case. Prior to trial, the *res ipsa loquitur* count was stricken on defendant's motion. That ruling raises the most serious challenge to the ultimate result.

In all, plaintiff presents the following six issues as grounds for reversing the judgment: (1) error in dismissing the *res ipsa loquitur* count; (2) error in rejecting proffered rebuttal testimony; (3) error in refusing to instruct the jury on the effect of evidence concerning custom and usage; (4) error in refusing to instruct the jury that defendant owed plaintiff a high degree of care; (5) error in refusing to submit several pleaded specifications of negligence to the jury; and (6) error in refusing to permit plaintiff to examine defendant's employees as adverse witnesses under § 624.1, The Code.

I. We consider first the two specifications regarding instructions. One challenges the refusal of the trial court to give a requested instruction on custom and usage and the other the refusal of the court to instruct as requested concerning standard of care.

■ Under the record made, there is nothing before us for review as to these matters. The court's failure to give a requested instruction saves no error in the absence of specific objection to such failure. Rule 196, Rules of Civil Procedure; *State v. Overmann,* 220 N.W.2d 914, 918 (Iowa 1974); *State v. Jensen,* 216 N.W.2d 369, 375 (Iowa 1974); *Cole v. Laucamp,* 213 N.W.2d 532, 534–535 (Iowa 1973).

■ The record discloses only plaintiff's request for the instructions. No objection was lodged to the court's refusal to give them. Accordingly the error, if any, is waived.

■ II. We next consider plaintiff's claim he was entitled to examine defendant's employees as adverse witnesses under § 624.1, The Code. We set out the statute in its entirety:

"All issues of fact in ordinary actions shall be tried upon oral evidence taken in open court, except that depositions may be used as provided by law.

"A party may interrogate any unwilling or hostile witness by leading questions.

*A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party,* and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief." (Emphasis added)

Those whom plaintiff wanted to call as adverse witnesses were employees of defendant school district. Although they did not come within the literal terms of the statute as officers, directors, or managing agents, plaintiff nevertheless insists he is entitled to call them under § 624.1. The trial court ruled otherwise and we agree. The statute clearly specifies those who are adverse witnesses. If we were to hold for plaintiff on this issue, we would necessarily amend the statute by adding another class of witness the legislature did not include.

The statute does not leave plaintiff without any help, however. As the trial court pointedly stated, the section permits a party to interrogate any unwilling or hostile witness by leading questions. The trial court has wide discretion in deciding when, and the extent to which, leading questions may be employed. *Giltner v. Stark,* 219 N.W.2d 700, 713 (Iowa 1974); *State v. Bradford,* 175 N.W.2d 381, 383 (Iowa 1970).

At no time did plaintiff seek to invoke this part of § 624.1, and indeed we find no evidence that any witness was either unwilling or hostile.

Plaintiff's position is without merit.

■ III. Plaintiff next urges us to reverse because he was not allowed to call two of defendant's witnesses, Kent Alexander and John Foenes, for further examination to set the stage for their impeachment. These men had previously testified for de-

fendant as experts on swimming pool safety. In response to hypothetical questions, they had expressed the opinion it was unnecessary to have a lifeguard or attendant stationed outside the pool under the circumstances here present.

During the trial, plaintiff located two witnesses he now says would have testified to previous conversations with these experts wherein each had expressed a contrary opinion. If this were borne out by the record, it would have been error to exclude such evidence. It would have been important rebuttal testimony.

However, the claim now made is quite different from that asserted during trial. While plaintiff's offer of proof is far from satisfactory, we nevertheless consider this matter on its merits because the colloquy between court and counsel made a formal offer unnecessary. *Kramer v. F. W. Woolworth Co.,* 255 Iowa 633, 123 N.W.2d 572, 575 (1963); *Sandon v. John Hancock Mut. Life Ins. Co.,* 245 Iowa 390, 394–395, 62 N.W.2d 247, 250 (1954).

Plaintiff has set out part, but not all, of this colloquy in his brief. The omitted portion was most significant in the trial court's ruling. Although plaintiff now insists he wanted to prove the experts had at some earlier time expressed an opinion contrary to their trial testimony, the rejected evidence at best would have shown a change of opinion *after* this accident. This is shown by the following exchange between the court and plaintiff's counsel:

"THE COURT: Well, I somewhat misunderstood what you indicated the nature of your testimony would be. And you do not intend to ask either one of these men if on such and such an occasion, in talking with so and so—

"MR. ROTHSCHILD: Yes.

"THE COURT: —they said that there should have been a person on the deck on the date in question?

"MR. ROTHSCHILD: No. This relates to—

"THE COURT: Subsequent conduct.

"MR. ROTHSCHILD: —subsequent conduct.

"THE COURT: All right. The motion is overruled, and that evidence, in my judgment, is not within—in the exercise of my discretion I'm ruling that you're not going to be permitted to recall them to go into that subsequent statement of the care that they considered to be used from now on. I mean from the time after. If this had been statements on their part that was directly in conflict with their opinion yesterday that they had expressed an opinion that there should have been a guard on the deck on July 17, 1970, I would have permitted you to do that.   *   *   *"

We cannot say the court abused its discretion in refusing to allow the proposed evidence as rebuttal testimony. See *Karr v. Samuelson, Inc.,* 176 N.W.2d 204, 211–212 (Iowa 1970); *Hamdorf v. Corrie,* 251 Iowa 896, 909–910, 101 N.W.2d 836, 844 (1960); *Robson v. Barnett,* 241 Iowa 1066, 1070–1071, 44 N.W.2d 382, 384 (1950).

■ IV. Plaintiff complains because the trial court refused to submit to the jury several specifications of negligence.

The jury was instructed it could find defendant was negligent either "(1) in failing to provide adequate supervision of the pool and persons using the pool in that its agents, employees, instructors, pool attendants and lifeguards failed to properly look out for the safety of Peter Wong" or "(2) in failing to provide adequate supervision of the pool and persons using the pool in that its agents, employees, instructors, pool attendants and lifeguards, knowing that Peter Wong was a nonswimmer or in the exercise of ordinary care should have so known, allowing Peter Wong to enter into the deep end of the pool."

Plaintiff objects because the instructions omitted the allegation that defendant was

negligent "in supplying lifeguards and instructors who were careless and inattentive to bathers" and also "in failing to have lifeguards permanently placed so that supervision of the bathers and swimmers in the pool would be provided."

We find no substantial difference between the specifications submitted and those plaintiff requested. As long as the real issues are covered by the instructions, the trial court may choose its own language and need not couch the charge in terms suggested by the parties. *Palleson v. Jewell Cooperative Elevator,* 219 N.W.2d 8, 16–17 (Iowa 1974); *Osterfoss v. Illinois Central Railroad,* 215 N.W.2d 233, 235 (Iowa 1974).

As part of this assignment of error, plaintiff also objects because the trial court refused to let the jury pass on the specification that defendant was negligent in "selecting incompetent, inattentive and careless lifeguards, pool attendants, instructors, agents and employees."

In other words plaintiff by this charge seeks to rely, not on the specific negligent conduct of these employees, but on the negligence of defendant in hiring incompetent persons to supervise the pool.

The trial court refused to instruct on this issue on the ground such negligence, even if established, could not be a proximate cause of the accident. We believe another, and perhaps more compelling, reason is the absence of any evidence these persons, when hired, were incompetent to perform their assigned tasks or that they were known to be "inattentive and careless."

A jury may consider only those issues which are properly pled and which have evidentiary support in the record. *Wroblewski v. Linn-Jones FS Services, Inc.,* 195 N.W.2d 709, 711 (Iowa 1972); *Adams v. Deur,* 173 N.W.2d 100, 113 (Iowa 1969).

We hold the question of defendant's negligence was given to the jury under proper instructions.

V. This brings us to the last alleged error, which is the trial court's refusal to permit *res ipsa loquitur* to stay in the case. The trial court sustained defendant's motion to strike this count before trial. As plaintiff argues, ordinarily *res ipsa loquitur* should not be stricken until the evidence is in, assuming the pleadings properly invoke that doctrine. *Fosselman v. Waterloo Comm. Sch. Dist.,* 229 N.W.2d 280, 283–284 (Iowa 1975).

In the present case, the trial court apparently ruled out *res ipsa loquitur* on the theory the pleadings did not allege circumstances making the doctrine applicable, or, to put it another way, no evidence could bring the accident within the *res ipsa loquitur* rule. Limiting our decision to the record now before us, we hold there was no reversible error in the trial court's ruling.

Plaintiff's intestate was one of seventeen young boys in the swimming class. There were seven persons engaged to supervise their activities. The whereabouts and conduct of each were inquired into at trial. It does not appear any other witnesses or any additional evidence would have been produced under application of the *res ipsa* doctrine.

We need not discuss again the general facts which must be shown before *res ipsa* applies. See 18 Drake L.Rev., 1–25 (1968); *Fosselman v. Waterloo Comm. Sch. Dist., supra,* and citations; *DeMoss v. Darwin T. Lynner Constr. Co.,* 159 N.W.2d 463, 465–466 (Iowa 1968).

The general rule was recently stated this way in *Fosselman,* 229 N.W.2d at 283:

"Res ipsa loquitur is a rule of evidence which, when applied, permits but does not compel an inference that defendant was negligent. *Clippinger v. Becker,* Iowa, 220 N.W.2d 879, 881. Under the doctrine the happening of an injury permits an inference of negligence where plaintiff produces substantial evidence that (1) the injury is caused by an agency or instru-

mentality under the exclusive control and management of defendant and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used."

The courts considering drowning accidents have unanimously found a failure to establish one or both of the elements set out in the quotation from *Fosselman.*

Plaintiff admits this but urges us to hold otherwise and re-examine *Hecht v. Des Moines Playground & Recreation Ass'n,* 227 Iowa 81, 287 N.W. 259 (1939), where we said the application of the *res ipsa loquitur* rule to drowning accidents would be "carrying the doctrine beyond its recognized limits." 227 Iowa at 99, 287 N.W. at 268.

*Hecht* has been widely quoted and relied on, even though it seems the statement itself was dictum. See *Young Men's Christian Association v. Bailey,* 112 Ga.App. 684, 146 S.E.2d 324, 332–333 (1965); *Blacka v. James,* 205 Va. 646, 139 S.E.2d 47, 50; *McKeever v. Phoenix Jewish Community Center,* 92 Ariz. 121, 374 P.2d 875, 877–878 (1962); *City of Evansville v. Blue,* 212 Ind. 130, 8 N.E.2d 224, 229 (1937); *Maher v. Madison Square Garden Corporation,* 242 N.Y. 506, 152 N.E. 403, 404 (N.Y.App.1926). See also Annot. 48 A.L.R.2d 104, 116–117 (1956).

Plaintiff relies heavily on a single Louisiana case, *Rome v. London & Lancashire Indemnity Co. of America,* La.App., 169 So. 132 (1936), which he asks us to follow despite the fact other courts, including our own, have heretofore refused to do so. See *Hecht v. Des Moines Playground & Recreation Association,* and *City of Evansville v. Blue,* both *supra.*

Even Louisiana has retreated from the *Rome* decision, and its effect has been all but destroyed by *Gill v. United States Fidelity & Casualty Company,* La.App., 257 So.2d 437, 438–439 (1972). The court there said:

"We gather from the foregoing that it is not the holding of the *Rome* case, *supra,* that the doctrine of res ipsa loquitur, as explained therein, is applicable. Rather, the court held that, if it is shown that there exist conditions inimicable to the proper operation of a public swimming pool, such an overcrowding or inattentiveness to duty on the part of the life guards, it will be presumed that, absent these deficiencies, the life guards would have discovered the peril of the deceased and rescued him."

While it is uncertain whether *Gill* overruled *Rome,* it is quite clear the Louisiana court no longer intends that case to be authority for the application of *res ipsa loquitur* to drowning accidents.

The various factors cited in the cases listed are persuasive against the plaintiff's position. They include the inherent dangers of swimming; the possibility of bodily malfunction on the part of the victim; the possibility of the victim's own negligence; and the lack of control over other swimmers who might cause or contribute to the misadventure. The authorities are unanimous that drowning is not such an occurrence which in the ordinary course of things happens only if there is negligence.

While the trial court might well have postponed its decision on the *res ipsa* count until the evidence was in, we are convinced the ruling would then have been the same. The question of negligence was fully explored. All available evidence was produced. All possible witnesses were called. There was no reversible error in the court's ruling.

VI. The judgment of the trial court is

Affirmed.