Eldon K. MILLER and Virginia E. Miller, Appellees,

v.

INTERNATIONAL HARVESTER COMPANY, Appellant.

No. 2-57817.

Supreme Court of Iowa.

Oct. 20, 1976.

Jones, Hoffmann & Davison, Des Moines, for appellant.

C. M. Manly and Tomasek & Vogel, Grinnell, for appellees.

Heard by MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

On injury-related products liability and negligence action trial jury returned a verdict for plaintiff Eldon K. Miller (plaintiff). His wife was concomitantly awarded loss of consortium damages. Defendant, International Harvester Company (International), appeals from judgment attendantly entered. We affirm.

March 12, 1969, plaintiff, a Poweshiek County farmer, purchased a Model 155 International Harvester manure spreader from Brannian Implement in Brooklyn, one of defendant's franchised Iowa dealers. The preassembled machine was ready for use when delivered to plaintiff.

November 5, 1971, plaintiff's son Arlo (also a farmer) first used the spreader while his father plowed an adjacent field. Arlo then reloaded the spreader, moved it by use of his tractor back to the field, and traded positions with plaintiff who thereafter operated the tractor with spreader attached.

After the load had been scattered by plaintiff some manure remained on the sides of the machine and in the "slurry pan" at the rear. He stopped the tractor in order to clean the spreader and before dismounting pulled a lever known as the "beater shifting lever retention device". This mechanism, when engaged, caused the beater blades at the back of the spreader to rotate. They, in turn, served to pulverize and scatter the manure. By pulling said lever plaintiff disengaged both beaters and they stopped whirling. Plaintiff testified he looked to be sure the beaters were "out of gear", but did not turn off the tractor "power take-off" switch. The pulling tractor provided power for both the apron (conveyor belt) and beaters.

Evidence was introduced disclosing it is standard operating procedure to leave the apron in motion while cleaning the sides and slurry pan. After alighting, plaintiff started scraping manure from the left side of the machine and slurry pan with a screwdriver. Suddenly and unexpectedly the lever retention device engaged, thus causing the beaters to start rotating. Plaintiff's clothing became entangled in the whirling blades and he was seriously injured.

By virtue of the fact we are here concerned only with jury instructions a description of plaintiff's injuries is unnecessary.

In support of a reversal International contends trial court erred in (1) refusing to submit two requested jury instructions and (2) instructing the jury as to the doctrine of strict liability in tort. These assignments will be entertained in reverse order.

I. As a preface to our consideration of this case some basic rules are noted.

■ We have repeatedly held it is trial court's duty to submit to the jury all issues presented by the pleadings upon which there is evidence tending to support them. See e. g., *Dobson v. Jewell*, 189 N.W.2d 547, 553 (Iowa 1971). Conversely, it is error to instruct upon an issue having no substantial

evidential support or which rests only on speculation. See *Dobson v. Jewell, supra.* See also *Mercer v. Ridnour,* 218 N.W.2d 625, 627 (Iowa 1974).

■ And, "[S]ufficiency of the evidence to warrant submission of a pleaded or properly litigated issue to the jury is determined by giving the evidence the most favorable construction it will reasonably bear in favor of the party urging submission." *Gunnison v. Torrey,* 216 N.W.2d 361, 364 (Iowa 1974).

■ Notably, rule 196, Iowa R.Civ.P. requires that a party objecting to instructions specify the grounds for complaint. In other words, an objector must state the complaint in such manner as to permit a ruling or correction of error by trial court. See *Rush v. Sioux City,* 240 N.W.2d 431, 441 (Iowa 1976); *State v. Blyth,* 226 N.W.2d 250, 273 (Iowa 1975). See also *State v. Youngbear,* 202 N.W.2d 70, 72 (Iowa 1972). On appeal no other objection will be considered. See *Dickman v. Truck Transport, Inc.,* 224 N.W.2d 459, 465 (Iowa 1974).

II. Mindful of the foregoing principles we first entertain defendant's contention to the effect trial court erred in giving jury instructions 16, 20, 21, 23 and 25. In argument, International does not specifically allude to several of these instructions but rather treats all of them cumulatively under the umbrella of strict liability in tort. The assignment will be accordingly entertained.

Plaintiff's petition clearly states, in part, a cause of action against defendant based upon strict liability in tort as postulated in § 402A, Restatement, Second, Torts. Defendant contends the evidence did not suffice to justify submission of such issue to the jury. This points up the problem instantly presented.

In *Hawkeye-Security Insurance Co. v. Ford Motor Co.,* 174 N.W.2d 672, 684 (Iowa 1970), we adopted § 402A, Restatement, Second Torts. See also *Kleve v. General Motors Corporation,* 210 N.W.2d 568, 570 (Iowa 1973).

Among the elements giving rise to such an action are proof (1) the product was in a defective condition and (2) the defect existed at time of sale. See *Kleve,* 210 N.W.2d at 570–571.

Plaintiff's expert witness, Dr. Leo Peters, testified at length concerning the structure, mechanics, and operation of the International Harvester 155 manure spreader. In relevant part this is his testimony, given absent any objection:

"Q. As a result of these [prior] examinations, did you make an analysis of the machinery for the purpose of determining what defect or defects, if any, existed in the machinery, and what the effect of such defects, if any, was on the operation of the machinery and particularly of the spreader? A. Yes, I did.

"Q. Did you observe any defect or defects in the operation of the spreader? A. Yes, I did.

"Q. And state to the jury what the defect or defects were. A. I found that the—that a portion of the shifting lever retention means for engaging the beaters was not adjusted properly so that the beaters could not be shifted out of gear and held out of gear by the retention means that was designed to do this.

"Q. What was the effect of this defect? A. The effect of this defect was that you could shift the shifting lever in so the clutch would be in a disengaged position but then it was very easy to move the lever out of this position and suddenly engage the beaters.

"Q. As a result of your observation and study of the spreader, do you have an opinion as to whether there has been any change or adjustment in the beater shifting lever retention device after the original manufacture and assembly of the spreader? A. Yes, I have an opinion.

"Q. And what is that opinion, please? A. It is my opinion that there appears to be no movement or change of any of the components of the shifting lever retention device from the time of assembly.

"    *    *    *

"Q.    *    *    * Do you have an opinion, based on engineering knowledge and practice and on reasonable scientific cer-

tainty, as to whether the beater shifting lever retention device is properly assembled and adjusted on this spreader? A. Yes, I have an opinion.

"Q. What is that opinion? A. My opinion is that it is improperly adjusted and assembled as it now stands.

"Q. Please state to the Court and jury your reasons for that opinion. A. This design of the retention device depends upon the pawl being located in such a way that when it contacts the back of the groove it will stay in the back of the groove. In this case the sector groove is low with respect to where the pawl is mounted so there is nothing in the groove as this is supposed to be used to hold this lever in the disengaged position. By very carefully setting this pawl on a corner of the sector, the lever will stay in position; but as far as the operation it is designed for by pulling with a rope and letting this pawl fall down into a slot, it will not hold it in place.

"Q. You have an opinion, please, based on engineering skill and experience and to a reasonable scientific certainty, as to whether this condition or defect as you have described it constituted a condition dangerous to the operator of the spreader when it was used in the manner and for the purpose for which it was intended to be used? A. Yes, I have an opinion.

"Q. And state that opinion, please. A. Yes, it was dangerous to the operator of the spreader when the spreader was used in the manner for which it was intended.

"Q. State the reason for that opinion. A. With the retention means as it is there, a person could put this lever in a position such as I have done here to disengage the beaters while still running the apron to clean out the spreader after a load has been spread. And he would be relying upon this lever and this mechanism to hold the beaters from being engaged. And this mechanism will not necessarily do that. It depends upon very exact positioning of this pawl in this position, whereas a simple adjustment on this would set the mechanism in such a way

that it could be relied upon to hold the beaters out of engagement with the power take-off running.

"Q. What is the fact, Dr. Peters, as to whether the normal and safe operation of the manure spreader requires a proper setting and adjustment of the component parts of the beater shifting lever retention device? A. It does require proper adjustment and setting.

"Q. What are your reasons for that opinion? A. If you are relying upon this device to work and hold the beaters out of engagement, and it will not, the beaters can become engaged unexpectedly and are a hazard.

"Q. Dr. Peters, referring to the spreader, the manure spreader before you, do you have an opinion as a result of examining the beater shifting lever retention device as to whether there has been any change of any kind in it since its construction, and I refer particularly to the beater shifting lever retention device. A. Yes, I have an opinion.

"Q. What is that opinion. A. My opinion is that it has not been changed, does not appear to have been changed since the time of manufacture, does not appear to have been adjusted either up or down."

■ It is well settled admission of opinion evidence rests largely within trial court's discretion. See e. g., *Tiemeyer v. McIntosh*, 176 N.W.2d 819, 824 (Iowa 1970). In the same vein, we have held a jury is at liberty to accept or reject opinion testimony. See *Schantz v. Schantz*, 163 N.W.2d 398, 404 (Iowa 1968). See also 2 Jones on Evidence, § 14:31 (6th ed. Gard 1972).

Responding to a lengthy hypothetical question Dr. Peters additionally stated, over defense counsel's objection, *infra*: "The cause of the accident, in my opinion, was the malfunction of the beater retention—beater shift lever retention means due to a defect in the adjustment."

Defendant's objection did designate claimed deficiencies or inaccuracies in the hypothetical question put to Dr. Peters, but

they were promptly corrected by plaintiff and the witness was then permitted to give the above answer. See 31 Am.Jur.2d, Expert and Opinion Evidence, § 64; M. McCormick, Opinion Evidence in Iowa, 19 Drake L.Rev. 245, 272–273 (1970). Parenthetically, the overruling of defense counsel's objection is not instantly controverted.

Despite the foregoing testimony, defendant again says plaintiff failed to prove all essential strict liability elements. It first argues:

> "[T]he 'defect' of which plaintiff complains, was not present at the time of plaintiff's accident and * * * accordingly the plaintiff has not met the burden of proof * * * and * * * the Court was in error in submitting the Doctrine of Strict Liability in Tort to the jury."

International supportively asserts plaintiff failed to generate a jury question as to whether the spreader was defective when it left the seller's hands. Indeed, defendant contends the spreader never passed through its hands at all, having been designed and manufactured by International Harvester of Canada, Ltd.

■ In order to hold another strictly liable in tort, a named party defendant must be shown to have been within the distributive chain of a product supplied for use and consumption by others. See *Kleve, supra*, 210 N.W.2d at 570–571; Restatement, Second, Torts, § 402A, Comment (f). See also *Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867, 871–872 (8th Cir. 1974).

■ At the time here concerned, defendant was unquestionably a distributor of manure spreaders manufactured by International Harvester of Canada, Ltd. By agreement with the Canadian corporation, Model 155 spreaders were constructed in Canada and delivered for distribution or resale by defendant in the United States. See generally W. Carmichael, Strict Liability in Tort—An Explosion in Products Liability Law, 20 Drake L.Rev. 528, 556 (1971). Moreover, the spreader was, as aforesaid, sold to plaintiff by Brannian Implement,

one of defendant's franchised dealers. From this it follows the jury could reasonably conclude defendant did place the subject spreader in the stream of commerce. And, upon arrival at Brannian Implement, it was completely assembled except for a few parts, such as wheels, which were installed by Brannian. The record is also devoid of substantial testimony disclosing Brannian adjusted the preassembled beater shifting lever retention device. It will now be recalled Dr. Peters concluded this mechanism was *the* proximate cause of the involved malfunction and plaintiff's attendant injuries. Dr. Peters and Arlo also testified no accident-related changes, alterations or repairs to the beater shifting lever retention device were made or effected from date of purchase to time of plaintiff's injury.

This court is persuaded the testimony above related sufficed to generate a jury question as to whether the spreader, more particularly the beater shifting lever retention device, was defective when it left defendant's hands.

In summary, we are satisfied substantial evidence was introduced which justified, if not mandated, submission of instructions to the jury regarding strict liability in tort.

III. Next reviewed is defendant's objection to a jury instruction given, and its complaint regarding others ineffectively requested, all relating to negligence.

International first assails this portion of instruction 19:

> "It is the claim of the plaintiff that the defendant International Harvester Company was negligent in the following respects:
> "a. In providing to the plaintiff, Eldon K. Miller, a manure spreader in which the beater shifting lever retention device was improperly assembled and adjusted.
> "b. In failing to provide the plaintiff with instructions in respect to adjusting the beater shifting lever retention device.
> "c. In failing to warn the plaintiff, Eldon K. Miller, of the hazards and dam-

ages resulting from an improperly adjusted beater shifting lever retention device."

Defendant insists none of the above specifications of negligence (a, b, c) should have been submitted to the jury. These contentions will be separately considered.

■ A. *Providing a properly assembled and adjusted device.* This is defendant's trial court objection: "The instruction presumed that the defendant, International Harvester Company, 'assembled and adjusted' the involved device."

Instruction 19 unquestionably focuses upon defendant's alleged negligence "in providing to the plaintiff" a machine which was "improperly assembled and adjusted". As previously noted, International's liability stems from its status as a "seller" or "distributor" and there is an absence of testimony to the effect the machine was materially adjusted by Brannian prior to the sale to plaintiff. This means the fact finding body could rationally determine defendant provided to plaintiff a machine equipped with an improperly assembled and adjusted beater shifting lever retention device.

Briefly stated, defendant comes squarely within the perimeter of Restatement, Second, Torts, § 402A, Comment (f).

B. *Failure to provide adequate directions.* On this subject defendant initially argues Arlo testified as to existence of directions received regarding the spreader and his understanding of them. Defendant thereupon contends instruction 19 is not supported by the evidence.

■ At the outset, this apt statement in *Arthur Elevator Co. v. Grove,* 236 N.W.2d 383, 393 (Iowa 1975), comes into play: "[W]e are under no compulsion to review any assignment of error when the complaining party cites no authority in support of his argument." Phrased otherwise, in the absence of relevant supportive authority an argument by a complaining party may be deemed waived.

■ In any event, the above contention is without merit. As stated by Dr. Peters, without objection by defense counsel:

"[I]t [the operator's manual] does not provide adequate instruction and warning on the adjustment of the beater shifting lever retention device. * * * [I]n the operation and lubrication section of the manual it tells how this device works, where to put the—how to pull on the lever to engage and disengage the clutch, but it does not say anything at all about the consequences of it not holding nor how to adjust it or how it should be set in order to work properly."

■ C. *Failure to warn of hazards from improperly adjusted beater shifting lever retention device.* Again, absent objection, Dr. Peters testified the decal on the spreader failed to adequately warn about operational safety. This expert was also asked to state his opinion, based upon a hypothetical question, as to whether defendant "should have warned ultimate consumers who are users of the spreader as to the hazards and dangers resulting from an improper[ly] adjusted beater shifting lever retention device". Over defense counsel's invasion-of-the-jury's province objection, Dr. Peters responded: "My opinion is there should have been a warning." The inadequacy of this objection is self-evident. See *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 654 (Iowa 1969); *Bengford v. Carlem Corporation,* 156 N.W.2d 855, 865 (Iowa 1968).

■ International further posits:

"It is finally respectfully submitted that the whole of the Court's Instruction No. 19 submits a Division of plaintiff's Petition pleaded as 'Simple Negligence' in the form of a separate count of 'Strict Liability in Tort'."

Whatever the merits of this obtuse objection, it is not entertained because not made below. See *Hegtvedt v. Prybil,* 223 N.W.2d 186, 190 (Iowa 1974). By the same token, the attendant argument is deemed waived. See also *Arthur Elevator Co. v. Grove, supra.*

Trial court did not err in submitting instruction 19.

IV. Next considered is International's requested instruction 21, not submitted.

By amendment to its original answer defendant alleged, as an affirmative defense, Arlo's contributory negligence, imputed to plaintiff, was a proximate cause of the latter's injury. See generally 53 A.L.R.3d 664.

Later defendant amended its answer, this time asserting:

"That any negligence of the third party, Arlo Miller, who fully and completely participated in a *joint enterprise* with the plaintiff, Eldon Miller, is imputed to the plaintiff, Eldon Miller, as contributory negligence more specifically specified hereinabove, which imputed contributory negligence was a proximate cause of plaintiff's claimed loss and damage." (emphasis supplied).

At close of all testimony, while voicing objections to trial court's proposed jury instructions, defense counsel stated:

"3. That this defendant, preparatory to an objection to the giving or to the failure to give Requested Instruction No. 21 and by virtue of the evidence adduced at this time and in this cause, would modify Requested Instruction No. 21 as follows:

"That in lieu of the first 33 lines of such instruction, that the Court instruct the jury herein that a *master-servant relationship* existed between the plaintiff, Eldon K. Miller, and his son, Arlo Miller; that the balance of the instruction be modified to delete that subparagraph thereafter following number one; that number two be changed to number one and that number three be changed to number two; that in the first line following the numbered subparagraphs, next to the last word, that the figure 'three' be stricken and the number 'two' be inserted therein." (emphasis supplied).

In support of the position thus finally taken, International argues both plaintiff and Arlo testified "they participated in and perpetrated [persisted] in their failure to replace the rope controlling the two lever devices on the manure spreader". Defendant thereby apparently maintains the causal defect arose after sale to plaintiff and there had been a substantial change in the machine prior to the accident.

This line of reasoning bypasses plaintiff's testimony revealing he put the beater blades out of gear by direct use of the lever control, not by utilization of the ropes. Therefore, assuming they were never replaced, it still remains such was not shown to have affected operation of the retention device.

International also refers to the fact that on four or five occasions Arlo admittedly repaired and replaced a spreader clutch plate because some teeth thereon had broken. As best determinable defendant implies Arlo was negligent in failing to heed the warning "evidenced by fractured parts of such manure spreader and in replacing the same without further or adequate adjustment or maintenance". It is attendantly urged Arlo's negligence was imputed to plaintiff by virtue of the averred master-servant relationship. International failed, however, to show wherein Arlo's conduct constituted negligence. Moreover, no evidence was adduced from which the jury could have found repair of the clutch was a proximate cause of the involved accident. See *Schultz v. Gosselink,* 260 Iowa 115, 121, 148 N.W.2d 434 (1967). See also *Schnebly v. Baker,* 217 N.W.2d 708, 728 (Iowa 1974); 1 Jones on Evidence, § 5:14 at 572–574; Code § 619.17.

The foregoing obviates the need to discuss imputation of Arlo's alleged contributory negligence to plaintiff under any legal concept.

No error attended trial court's refusal to give defendant's requested instruction 21 as amended.

V. International further contends trial court erred in failing to submit this requested instruction 23:

"At the time and place involved in this lawsuit it was the duty of plaintiff to exercise ordinary care by taking such precautions for his own safety, including the avoiding of placing himself in a position

of possible peril with reference to the manure spreader, as an ordinarily reasonable and prudent person would have under the same or similar circumstances.

"If you find from a preponderance of the evidence that plaintiff failed to take such precautions for his own safety as an ordinarily reasonable and prudent person would have taken under the same or similar circumstances, plaintiffs would be negligent in this respect; otherwise, not."

■ Defendant makes only sparse reference to the record with regard to the above requested instruction. And the summarized evidence, not aided by citations to the appendix, violates rule 344(a)(4), Iowa R.Civ.P. See also rule 344(g).

Be that as it may, defendant's entire argument on this assignment is thus stated:

"Since the record evidence shows that the peril was open and obvious to the plaintiff, not only through the statements contained in the warning encompassed in a decal identified and admitted into evidence as Exhibit D–4, but also the plaintiff's admitted actions in rechecking the beater lever retention device before proceeding to the rear of the spreader, the necessary elements for such instruction are present in the evidence to indicate not only the peril but the plaintiff's personal appreciation of such peril."

The decal referred to, attached to a chain guard or shield on the spreader, states in relevant part:

"3. When mechanism becomes clogged, disengage power before cleaning.

"4. Keep hands, feet and clothing away from power-driven parts."

International seemingly claims plaintiff negligently ignored these warnings in cleaning the manure spreader and slurry pan when the tractor power switch had not been turned off. It appears requested instruction 23 focuses upon defendant's contributory negligence allegations. Sequentially, the instant contention may be resolved by reference to other jury instructions given.

■ This court has repeatedly held jury instructions must be read together and related to each other to determine the rights of the parties. See e. g., *Simkins v. City of Davenport,* 232 N.W.2d 561, 567 (Iowa 1975).

■ Furthermore, "[a]s long as the real issues are covered by the instructions, the trial court may choose its own language and need not couch the charge in terms suggested by the parties." *Wong v. Waterloo Community School District,* 232 N.W.2d 865, 870 (Iowa 1975).

By instruction 11 the jury was told, inter alia:

"The defendant asserts that the plaintiff, Eldon K. Miller, was negligent in one or more of the following particulars:

"1. In his activities and actions in disregard of warning signs and decals present on the manure spreader.

"2. In his disregard of cautions and warnings as contained in the owner's manual distributed with the manure spreader and placed in the custody of the said plaintiff.

"3. In his failure to adjust, or cause to be adjusted, those portions, parts, and controls of the manure spreader as dictated, required and explained in the owner's manual distributed with the manure spreader.

"4. In his failure to disconnect or turn off the power source to such manure spreader when proceeding to clean the same."

The involved subject matter is further explicated by two other instructions given.

Instruction 12 says:

"It is a contention of defendant that plaintiff Eldon K. Miller was negligent in his activities and actions in disregarding the warning sign and decal on the manure spreader.

"You are instructed that if you find that the sign and decal on the manure spreader contained a warning of danger in respect to the operation of the manure spreader in question and further find that plaintiff disregarded said warning, if

any, the plaintiff would be negligent in the respect herein asserted; otherwise he would not."

By instruction 15 the jury was told:

"It is a contention of the defendant that the plaintiff Eldon K. Miller was negligent on the occasion herein involved in that he failed to disconnect or turn off the power source to the manure spreader when proceeding to clean the spreader.

"In this regard, you are instructed that if an ordinarily careful and prudent person, when acting under circumstances which were the same or similar to those which plaintiff was acting, would have disconnected or turned off the power source to the manure spreader when cleaning the spreader and further find that plaintiff Eldon Miller failed to do so, then plaintiff Eldon Miller would be negligent in this respect. Otherwise he would not be negligent in this respect."

█ The instructions given, *supra,* adequately informed the jury regarding plaintiff's alleged failure to (1) heed warnings given and (2) exercise due care for his own safety. Consequently, no error attended trial court's refusal to submit defendant's requested instruction 23.

In resolving this appeal we have considered every contention asserted by defendant, whether or not specifically discussed, *supra,* and find none have merit.

AFFIRMED.