**Robert ALLER, Appellant,**

v.

**RODGERS MACHINERY MFG. CO.,
INC., Appellee.**

No. 60694.

Supreme Court of Iowa.

July 26, 1978.

Louis A. Lavorato and David S. Wiggins, of Williams, Hart, Lavorato & Kirtley, West Des Moines, for appellant.

H. Richard Smith, of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellee.

Considered by MOORE, C. J., and Le-GRAND, REES, REYNOLDSON, and MA-SON (serving after June 14, 1978, by special assignment), JJ.

MASON, Justice (serving by special assignment).

Plaintiff, Robert Aller, appeals from a judgment entered upon an adverse jury verdict and from the order denying his motion for new trial. Plaintiff instituted a law action in the Polk District Court seeking damages from defendant, Rodgers Machinery Manufacturing Company, Inc., for injuries sustained by plaintiff in the operation of a saw manufactured by defendant.

Plaintiff's petition was in three divisions. In division 1 his claim for relief was based on the theory of defendant's negligence. In division 2 the claim asserted was based on breach of implied warranty and in division 3 he sought recovery on the theory of strict liability in tort. Plaintiff withdrew divisions 1 and 2 at the close of all the evidence prior to submission to the jury. The only theory presented to the jury was one of strict liability in tort.

In division 3 plaintiff alleged he was injured while using a power saw sold to his employer by defendant, who had manufactured the saw; plaintiff was operating the saw in its intended manner when injured; the saw was defective and unreasonably dangerous when sold; and the defects were the proximate cause of plaintiff's injuries.

The facts giving rise to this lawsuit occurred July 24, 1974, when plaintiff's right hand was cut and crushed by the blade of an upright panel saw designed, manufactured and distributed by defendant. According to plaintiff the injury occurred when his co-worker activated the saw while plaintiff's hand was under the guard of the saw.

Plaintiff's employer, Francisco Cabinet Corporation, had purchased the saw from defendant in 1967. At some time after delivery of the saw and prior to plaintiff's injury, Francisco had installed a guard on the saw to prevent employees from reaching into the blade as it was coming down.

In normal use the saw took two and one-half seconds from the start of its downward cut to reach the point at which plaintiff had his right hand. Here, however, the saw was at the point of impact when it was activated by plaintiff's co-worker. It appears the saw was designed so that it would pop out and start cutting whenever the forward button was pushed.

During the trial of this matter while plaintiff presented his evidence he attempted to have admitted into evidence certain exhibits consisting of safety standards promulgated by various organizations and governmental agencies. Defendant raised numerous objections to the admission of these exhibits which the court sustained.

Plaintiff also attempted to have his expert witness state his opinion whether the saw was dangerous. This attempt was thwarted when defendant objected on several grounds and the court sustained the objection.

After all the evidence was presented, defendant amended its answer to conform to proof to add as an affirmative defense the allegation the sole proximate cause of plaintiff's injuries was the unexpected activation of the saw by a fellow employee of plaintiff. The court allowed the amendment because defendant had originally pled the defense to plaintiff's negligence charge in division 1 of his petition.

Immediately thereafter, the court afforded plaintiff and defendant an opportunity to raise their objections to its proposed instructions. Plaintiff raised several objections which the court overruled.

After the jury returned its verdict the court entered judgment for defendant and granted plaintiff an extension of time in which to file a motion for new trial. In his motion plaintiff raised the same issues raised on appeal. This motion was overruled by the court.

In seeking reversal and a new trial plaintiff contends: (1) this court should change the law with respect to strict liability so "unreasonably dangerous" is no longer an element; (2) the definition of "unreasonably dangerous" should be changed; (3) the court erred in instructing on defendant's duty to design a safe product, subsequent changes in the product, sole proximate cause, and plaintiff's credibility; (4) the court erred in refusing to allow plaintiff's expert to testify the product was dangerous; and (5) the court erred in refusing to admit nine exhibits relating to safety standards as inapplicable or irrelevant.

Plaintiff's written brief and argument in support of these contentions presents the following questions for determination:

1. Did the trial court err in instructing the jury "unreasonably dangerous" was an element of strict liability in tort?

2. Did the trial court err in instructing the jury on the definition of the phrase "unreasonably dangerous"?

3. Did the trial court err in instructing the jury a manufacturer has a duty to design, manufacture and assemble a product which is reasonably suitable and adequate for the purpose for which it is manufactured?

4. Did the trial court err by instructing the jury it was to consider the duty of the manufacturer as of the date it manufactured the saw?

5. Did the trial court err by failing to instruct the jury that a change in a product after it leaves the manufacturer will not relieve it ·of liability if the change was foreseeable or if it was not the cause of injury?

6. Did the trial court err in instructing the jury on defendant's affirmative defense of sole proximate cause?

7. Did the trial court err by instructing the jury that in considering whether plaintiff had assumed the risk of injury it was to consider all of the facts established by the evidence including plaintiff's statements, age, experience, knowledge and understanding as well as the design and mode of operation of the saw and the obviousness of the condition and the danger it posed?

8. Did the trial court err in failing to allow plaintiff's expert witness to testify that the saw was dangerous?

9. Did the trial court err in failing to admit into evidence certain exhibits consisting of safety standards promulgated by various associations and governmental agencies?

I. Plaintiff concedes that under the applicable Iowa law "unreasonably dangerous" is an element of strict liability in tort as defined by Restatement, Second, Torts, section 402A. See *Kleve v. General Motors Corporation,* 210 N.W.2d 568, 570–571 (Iowa 1973). As plaintiff points out, this court specifically adopted the principles found in section 402A of the Restatement in *Hawk-eye-Security Insurance Co. v. Ford Motor Co.,* 174 N.W.2d 672, 684 (Iowa 1970).

Nevertheless, plaintiff urges this court to re-examine this area of law and remove "unreasonably dangerous" as an element of strict liability.

Defendant not only argues the court was correct in including this element in its instructions but also argues plaintiff cannot raise this issue on appeal. Because of the seriousness of the latter of these two arguments by defendant, it will be considered first.

As noted plaintiff alleged in division 3 of his petition the saw was in a "defective condition unreasonably dangerous" when it left defendant's hands. Plaintiff never attempted to strike this allegation by amendment to his petition. Defendant in answer denied this allegation.

The issue thus raised by the pleadings was whether the saw was in a defective condition unreasonably dangerous to the user.

During trial plaintiff attempted to have his expert witness testify the saw was dangerous. He waited until all the evidence was presented at trial and then raised his argument "unreasonably dangerous" should not be considered an element of strict liability in his objections to the court's instructions which contained the phrase.

In light of defendant's argument the question then becomes whether a party may try an entire case upon his theory and then abandon this theory by raising objections to its inclusion in the court's instructions to the jury.

The following statement from *Wilson v. Fleming,* 239 Iowa 718, 736, 31 N.W.2d 393, 402, mo. den., 239 Iowa 918, 32 N.W.2d 798, lends support to defendant's position:

"Further, the parties seem to have proceeded until the close of the evidence upon the trial as if plaintiff were entitled to have the damage due the owners and that due Heck separately assessed. Separate condemnation awards were made. Plaintiffs' petition claimed separate damages to the owners and to the tenant. No attack was made thereon. Throughout the trial value witnesses testified without objection to the

difference in value of the farm and the difference in value of the leasehold, before and after the condemnation, apparently without regard to what the total damage would have been if there had been no leasehold interest. If such method of evaluating the damage was not to be followed, it would seem the question should have been raised before the time to instruct the jury."

This same point was made in *Vaillancourt v. Dutton*, 115 Vt. 36, 50 A.2d 762, 763, where the court stated:

" * * * It appears that throughout the trial, until the evidence was closed and the arguments completed, the cause was treated by both sides as an action founded upon P.L. 8540. The Court was justified in so regarding it and the defendant's objection came too late. His exceptions to the charge and to the submission of the special verdict are unavailing. * * *."

Even more pointed is the following statement from 88 C.J.S. Trial section 414, pp. 1138–1139 (citing *Wilson* and *Vaillancourt* as support):

" * * * A party may not complain of the giving of an instruction with respect to an issue created by his own motion or evidence. So a party cannot except to an instruction given at his own request, or in harmony with one he requested, or *with the theory advanced,* or the facts pleaded or admitted, by him; * * *." (Emphasis supplied).

Although there is merit to defendant's contention that under this record plaintiff's claim the court erred in instructing the jury that "unreasonably dangerous" was an element of strict liability in tort is unavailable to plaintiff on appeal, we prefer not to base our determination of the question presented by plaintiff's contention on that ground.

■ Therefore, we reach plaintiff's argument that the inclusion of the element "unreasonably dangerous" in a strict liability case is error because it injects considerations of negligence into strict liability which was adopted to eliminate the necessity to prove negligence. We do not agree that the inclusion of the phrase injects negligence into such a case.

The rule stated in section 402A of the Restatement as adopted in this jurisdiction in *Hawkeye-Security Insurance Co.* makes the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product. Proof of the particular seller's or manufacturer's negligence in the making or handling of the product is not required since the strict liability in tort doctrine eliminates both privity and negligence.

However, the principle announced in this section of the Restatement applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer which will be unreasonably dangerous to him. The doctrine does not prove plaintiff's case.

For a plaintiff to prove that a product is in a "defective condition unreasonably dangerous", he must show the defect in the product was not one contemplated by the user or consumer which would be unreasonably dangerous to him in the normal and intended use or consumption thereof. *Kleve v. General Motors Corporation,* 210 N.W.2d at 571.

In addition, plaintiff has the burden of proving his injury or damage was proximately caused by a defect in design or manufacture of the product which existed at the time the product left the control of the seller or manufacturer.

Plaintiff also has the burden under the doctrine of strict liability of proving the defective condition of the product makes it unreasonably dangerous to the user or consumer. "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Comment i, section 402A of the Restatement.

Such proof as is required of plaintiff in this connection does not necessarily rest on direct evidence. It can be established by circumstantial evidence. *Kleve v. General Motors Corporation,* 210 N.W.2d at 571.

As supporting the foregoing statements in whole or in part see in addition to *Hawkeye-Security Insurance Co.* and *Kleve, Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 901; *Suvada v. White Motor Company,* 32 Ill.2d 612, 210 N.E.2d 182, 188; *Dunham v. Vaughan & Bushnell Mfg. Co.,* 42 Ill.2d 339, 247 N.E.2d 401, 403; *Phillips v. Kimwood Machine Company,* 269 Or. 485, 525 P.2d 1033, 1036; Supplement to 2 Harper and James, Law of Torts, p. 238; Prosser, Torts, (Fourth Ed.), section 99, p. 661; Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 840; and the comments to section 402A of the Restatement.

The trial court recognized the foregoing principles of law in instructions 9 and 10 by placing the burden upon plaintiff to establish by a preponderance of the evidence that the product involved in this case was in fact in a defective condition for the use intended and to further establish the defective condition of the product was unreasonably dangerous.

■ In order to prove that a product is unreasonably dangerous, the injured plaintiff must prove the product is dangerous and that it was unreasonable for such a danger to exist. Proof of unreasonableness involves a balancing process. On one side of the scale is the utility of the product and on the other is the risk of its use.

Whether the doctrine of negligence or strict liability is being used to impose liability the same process is going on in each instance, i. e., weighing the utility of the article against the risk of its use. Therefore, the same language and concepts of reasonableness are used by courts for the determination of unreasonable danger in product liability cases. *Phillips v. Kimwood Machine Company,* 269 Or. at 497–499, 525 P.2d at 1039. See also comment k to section 402A of the Restatement.

This balancing process is the same as that used in negligence cases. This process is explained in Prosser, Torts, section 31, pp. 145–149, where it is stated:

" * * * [T]he real basis of negligence is not carelessness, but behavior which should be recognized as involving unreasonable danger to others. * * * Against this probability [of harm] and gravity, of the risk, must be balanced in every case the utility of the type of conduct in question."

We believe this similarity in balancing processes had led plaintiff to believe proof of negligence has been injected into proof of strict liability. Despite this similarity in balancing processes, there is a difference between the two theories of liability.

■ In strict liability the plaintiff's proof concerns the condition (dangerous) of a product which is designed or manufactured in a particular way. In negligence the proof concerns the reasonableness of the manufacturer's conduct in designing and selling the product as he did. *Phillips v. Kimwood Machine Company,* 269 Or. at 493–495, 525 P.2d at 1037.

In strict liability the plaintiff takes the design as it was finalized in the finished product and shows it was both dangerous and that it was unreasonable to subject the user to this danger because the user would not contemplate the danger in the normal and innocent use of the product or consumption of the product. In negligence the plaintiff shows the manufacturer was unreasonable in designing the product as he did.

The "unreasonably dangerous" element of strict liability does not inject considerations of negligence into a strict liability case. The two theories of recovery are not the same. Plaintiff's contention to the contrary is without merit. We reject plaintiff's invitation to remove "unreasonably dangerous" as an element of strict ■

[4] II. Plaintiff urges that in the event this court decides to retain "unreasonably dangerous" as an element, which we have done, it should not be defined from the consumer's expectation, as was done in the present case.

In support of this contention plaintiff maintains the trial court erred in defining the phrase "unreasonably dangerous" in its

instruction to the jury. He argues the test of whether a product is unreasonably dangerous should be one which places the emphasis on the seller's knowledge and not on the consumer's expectations. He urges this court to adopt the following test from *Phillips v. Kimwood Machine Company,* 269 Or. at 492, 525 P.2d at 1036:

" \* \* \* A dangerously defective article would be one which a reasonable person would not put into the stream of commerce *if he had knowledge of its harmful character.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk involved.* Strict liability imposes what amounts to constructive knowledge of the condition of the product." (Emphasis in original).

Plaintiff appears to imply the *Phillips* test is different from the present test as set out in division I herein. The court in *Phillips* made clear there was no difference between the two tests when it stated, 269 Or. at 492, 525 P.2d at 1036–1037:

"On the surface such a test would seem to be different than the test of 2 Restatement (Second) of Torts § 402A, Comment *i.,* of 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it.' \* \* \* To elucidate this point further, we feel that the two standards are the same because a seller acting reasonably would be selling the same product which a reasonable consumer believes he is purchasing. That is to say, a manufacturer who would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it. The foreseeable uses to which a product could be put would be the same in the minds of both the seller and the buyer unless one of the parties was not acting reasonably."

Because the tests are the same, we see no reason why we should adopt the *Phillips* test over that presently used in this jurisdiction unless there is clearly some advantage to doing so. The only advantage mentioned by the court in *Phillips,* 269 Or. at

493–495, 525 P.2d at 1037, was that its test preserved the use of familiar terms and thought processes with which courts, lawyers and jurors customarily dealt.

This court adopted the present test in 1970 in *Hawkeye-Security Insurance Co. v. Ford Motor Co.,* 174 N.W.2d at 684. Since then courts, lawyers and citizens in general have had time to think of strict liability in terms of the language of section 402A and the comments thereto. A change now to the *Phillips* test would be disadvantageous. We reject plaintiff's contention urging this court to shift to the *Phillips* test.

Plaintiff contends the present test is improper because it injects considerations of contributory negligence into a strict liability case. He argues the present test puts the focus on the buyer and asks the jury to examine what the ordinary buyer would expect in the situation in which the plaintiff found himself. He reasons that if an ordinary buyer expected a machine to be in the condition received, the jury may tend to think the buyer was contributorily negligent by using the machine in that condition.

This is not a fault of the present test. Under the present test once a jury finds the ordinary buyer expected the machine to be in the condition received, it must find the plaintiff cannot recover on a theory of strict liability. Such a jury could not tend to consider contributory negligence at all.

▪ III. Plaintiff contends the trial court erred in submitting instruction 11 to the jury. This instruction was in pertinent part as follows:

"The manufacturer has a duty to design, manufacture and assemble a product which is reasonably suitable and adequate for the purpose for which it is manufactured. In the performance of these duties, the manufacturer is responsible for all the component parts of its product, including those parts manufactured by others."

Plaintiff argues the trial court, by the use of the phrase "reasonably suitable," improperly injected a test of negligence into this strict liability case. He supports this argument by citation to *Wagner v. Larson,*

257 Iowa 1202, 136 N.W.2d 312, a case tried and submitted to the jury on a negligence theory.

Plaintiff's reliance upon the *Wagner* case is misplaced. While it is true the trial court in *Wagner* submitted to the jury a charge similar to that given here ("The law provides that an employer must use reasonable care to provide and maintain for his employees, reasonably suitable and safe appliances, machinery and tools with which to work." 257 Iowa at 1210, 136 N.W.2d at 317), the court pointed out the correctness of this instruction was not challenged. 257 Iowa at 1210, 136 N.W.2d at 317. *Wagner* does not stand for the proposition an instruction such as that given in the case was a negligence instruction.

The portion of instruction 11 at issue here was a proper instruction in a strict liability case. The use of the phrase "reasonably suitable" did not inject a negligence standard into this strict liability case.

It was necessary for the jury to understand the duty of the manufacturer so that it could determine if the saw was defective. If the saw as designed, manufactured or assembled failed to perform reasonably, adequately and safely in the normal anticipated or specified used to which the seller intended it to be put, it was defective. Instruction 24.3, Iowa Uniform Jury Instructions. This test is not a negligence test; it is a strict liability test.

The court did not err in submitting instruction 11 to the jury.

■ IV. Plaintiff contends the trial court erred in submitting instruction 12 which injected negligence into this strict liability case. This instruction was as follows:

"A manufacturer's duty in respect to the manufacture of a product is not to be considered nor determined by you as though it has been manufactured at the time of trial, or even at the time of the accident; on the contrary, in considering the defendant's liability you must consider the saw as manufactured in April, 1967."

Plaintiff did not explain at trial and does not explain in written argument to this court how this instruction injects considerations of negligence standards. We fail to see how it does.

It informed the jury it was to consider the duty of the manufacturer as of the time of the manufacture of the product. The jury was to consider the saw's propensity for danger based on knowledge common to the community in April of 1967. This was the proper time at which this determination was to be made. The court did not err in giving this instruction.

Plaintiff raises objections to this instruction which were not raised at trial or in his motion for new trial and, consequently, will not be considered here for the first time on appeal.

■ V. Plaintiff contends the trial court erred in submitting instruction 13 since it was an incomplete statement of the law regarding changes in a product after it leaves the manufacturer. This instruction as given was as follows:

"The plaintiff must establish that the machine here involved was expected to and did reach him without substantial change in condition from the time it was sold by the defendant, that is, that the defect existed at the time of the sale. A manufacturer or seller is not responsible if it delivers the product in a safe condition and subsequent mishandling, alteration or other causes beyond its control render the product defective."

Plaintiff requested the court add the following sentence to the instruction:

"However, a subsequent change either foreseeable or which is not the cause of plaintiff Robert Aller's injuries will not relieve the defendant Rodgers Machinery Manufacturing Co., Inc. of responsibility."

In support of his position plaintiff draws our attention to Annot., 41 A.L.R.3d 1251 and the cases cited therein. We have studied this annotation and the relevant cases cited therein and have found *Hales v. Green Colonial, Inc.*, 490 F.2d 1015, 1020 (8 Cir. 1974), to contain a succinct statement of plaintiff's position:

"The law recognizes that there can be strict liability of a supplier even though the product is altered or changed if it is foreseeable that the alteration would be made and the change does not unforeseeably render the product unsafe. In effect the question involved is simply whether the intervening alteration of the product was the superseding cause of the injuries. * * * [citing authorities]."

The *Hales* court required two events be foreseeable. First, it must be foreseeable that the user of the product would alter or change it. Second, the fact that the product will be rendered unsafe by such change or alteration must also be foreseeable. To instruct as plaintiff urged here would have required the court to disregard the second part of the *Hales* test.

That portion of the instruction urged by plaintiff—that a subsequent change which was foreseeable will not relieve the manufacturer of responsibility—was not in accord with the *Hales* rule of law. It was not error for the court to refuse to give such an instruction.

■ The court was not required to add to instruction 13 the second part of the sentence urged by plaintiff because it had already included the concept embodied therein in the instruction.

As noted, plaintiff urged the court to add to its instruction the statement that a subsequent change in a product would not relieve a manufacturer of liability if such change were not the cause of plaintiff's injury.

In the instruction as given, the court informed the jury the defect causing the injury must have been present in the saw at the time it was sold by defendant. It also told the jury defendant could not be found liable if a subsequent change rendered the product defective.

By this instruction the court limited the jury's consideration to two possible defects, one in the saw and one caused by a subsequent change in the saw. It told the jury that if the one in the saw were the cause of the injury, the other created by the subse-

quent change could not also be the cause of the injury. If the one caused by the subsequent change were the cause of the injury, the defect in the saw could not also be the cause.

The court also informed the jury defendant would be liable if the defect in the saw were the cause of plaintiff's injury. Because of the court's limitation to two possible defects, this charge to the jury also served to inform it defendant would be liable if the defect in the saw caused the injury, even though a subsequent change had also created a defect. This was the gist of plaintiff's addition to instruction 13 and since it was already included in the instruction, the court did not err in failing to add it again at the end of the instruction.

VI. Plaintiff contends the trial court erred by instructing the jury on defendant's affirmative defense of sole proximate cause. He does not contend the instruction was erroneous but rather that there was insufficient evidence to warrant the submission of this issue to the jury.

Certain well-established principles guide us in our review of matters such as this. In *Clubb v. Osborn*, 256 Iowa 1154, 1160–1161, 130 N.W.2d 648, 652, the court set out the following pertinent principles:

"It is error to submit an issue having no support in the record. * * * [citing authorities].

" 'When the court instructs the jury upon a certain question in a case there must be some evidence upon which to base such instruction.' * * * [citing authority].

" * * *

"In considering whether or not there was evidentiary support for an instruction we give the evidence the most favorable construction it will reasonably bear. * * * [citing authority]." See also *Wardlow v. City of Keokuk*, 190 N.W.2d 439, 447 (Iowa 1971) and *Curran, Etc. v. National-Ben Franklin, Etc.*, 261 N.W.2d 822, 823 (Iowa 1978).

Here, plaintiff testified on cross-examination he believed the saw was activated in some manner by his co-worker. On redirect

examination he stated he had assumed the co-worker had activated the saw. He also explained he had been told by another employee that the co-worker had accidentally activated the machine.

In his petition appellant had alleged defendant was negligent in failing to design and manufacture a saw with the necessary parts and equipment so that the saw could not be turned on if the operator or fellow employees of the operator of the saw accidentally or inadvertently touched the control panel of the saw. In the implied warranty division of his petition and in the strict liability division, plaintiff had adopted and incorporated these allegations from his negligence division.

Having construed this evidence in light of the guiding principles previously set out, we find there was sufficient evidence of record for the court to submit the affirmative defense of sole proximate cause to the jury.

VII. Plaintiff contends the trial court singled out his testimony on the issue of assumption of risk and gave the jury a special credibility instruction as to that testimony. He maintains the court urged the jury to consider his testimony more closely than that of other witnesses, thereby prejudicing his case and entitling him to a new trial. This contention is totally without merit.

In instruction 17 the court informed the jury that in determining whether plaintiff had assumed the risk of injury it was to consider not only plaintiff's statements but also his age, experience, knowledge and understanding, as well as the design and mode of operation of the saw and the obviousness of the condition and the danger it poses.

This instruction is in accord with instruction 24.9, Iowa Uniform Jury Instructions, and is the instruction on assumption of risk. It is not a special credibility instruction.

This instruction focused on plaintiff because it is his knowledge and appreciation of the risk which determines whether he assumed the risk and such focusing is therefore necessary. This necessary focusing is explained in Restatement, Second, Torts, section 496D, comments c, d and e, p. 575, which are as follows:

"c. The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence. (See §§ 464, 289, and 290). If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk, although it may still be found that his conduct is contributory negligence because it does not conform to the community standard of the reasonable man.

"d. In cases of assumption of risk, however, the plaintiff's own testimony as to what he knew, understood, or appreciated, is not necessarily conclusive. There are some risks as to which no adult will be believed if he says that he did not know or understand them. Thus an adult who knowingly comes in contact with a fire will not be believed if he says that he was unaware of the risk that he might be burned by it; * * *.

"e. Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court. The court may itself determine the issue only where reasonable men could not differ as to the conclusion."

The court's instruction here was proper and did not constitute a special credibility instruction.

VIII. Plaintiff contends the trial court erred in failing to allow his expert witness to testify that the saw was dangerous.

During plaintiff's direct examination of his expert witness, Kenneth Olson, the following colloquy occurred:

"Q. Do you have an opinion based upon engineering skill and experience and to a reasonable scientific certainty as to whether

these defects in design constituted a condition dangerous to the operator of the machine when it was used in the manner and purpose for which it was intended. * *.

"MR. SMITH: We would urge the objection in that it calls for an opinion and conclusion of the witness for which no proper foundation has been laid to show this witness is qualified to give such an opinion; to show that it's a proper subject of expert testimony or that it is—and it is irrelevant and immaterial to any of the issues in this cause as shown by the record.

"THE COURT: Well, as far as the question of whether it's reasonably dangerous, the Court is going to let the jury pass on that. The Court will sustain the objection."

Later, out of the presence of the jury, the court allowed plaintiff to make an offer of proof on this matter. The witness then testified in his opinion the saw was dangerous when it was used in the manner and purpose for which it was intended. He testified the machine was dangerous because if the circuit was energized while the saw was returning to its starting position it would pop out and start cutting immediately without warning.

Plaintiff supports his position by citation to *Miller v. International Harvester Co.,* 246 N.W.2d 298 (Iowa 1976). In this case the plaintiff's expert witness testified that in his opinion a machine was dangerous to the operator of the machine when it was used in the manner for which it was intended. *Miller,* 246 N.W.2d at 302. We have reviewed the record in *Miller* and find this case unpersuasive because no objection was raised when the expert was asked to opine as to the dangerousness of the machine.

Plaintiff maintains Olson should have been allowed to testify because (1) he was an expert, (2) he had inspected and examined the saw three times, and (3) he had read and studied the owner's manual, the company catalog and the electrical schematic. He argues these factors qualified him to testify on this matter. He contends the expert's opinion was necessary to aid the jury. He charged the trial court abused its discretion in sustaining defendant's objection.

Defendant argues the court did not abuse its discretion because the expert's opinion was not needed as an aid to the jury and because the question asked was one of law and as such was not a proper subject of expert testimony.

■ Here, defendant's objection was sustained; therefore, the ruling will be upheld if the evidence could be held inadmissible on any theory, even though not urged in the objections. Because this ruling concerned the admissibility of opinion evidence, it will not be disturbed unless manifest abuse of discretion is shown. *Hegtvedt v. Prybil,* 223 N.W.2d 186, 189 (Iowa 1974).

■ The court here would have been correct in considering the question at issue as one calling for an opinion on a question of law. The law of strict liability requires that a defective product must be unreasonably dangerous to the user. The requirement of unreasonable danger is a legal standard upon which no witness, expert or non-expert, may express an opinion as to whether or not the person or the conduct or the product measures up to that standard. *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 361, 5 N.W.2d 646, 663; *Hegtvedt v. Prybil,* 223 N.W.2d at 190.

The court did not err in sustaining defendant's motion. It was correct to submit this question to the jury as a matter for its determination.

IX. Plaintiff contends the trial court erred by refusing to admit certain exhibits constituting safety standards promulgated by various associations and governmental agencies. The exhibits in question are numbered consecutively from 57 through 65.

■ Exhibits 57, 58 and 59 were clearly not admissible in the face of defendant's objections that the witness was not familiar with the safety standards to which the woodworking industry widely adhered. The witness admitted these standards were used in the automotive industry. These

exhibits were also inadmissible in light of defendant's objections they were irrelevant because they dealt generally with safety standards in the metalworking industry and specifically with machine tools, machines used to shape or form metal.

 Exhibit 60 contained a safety code for woodworking machinery which had been approved by the American Standards Association. The court sustained defendant's objections to the admission of these standards. We have examined this exhibit closely and find none of the standards in it applicable to the type of problem that caused plaintiff's injury. The court was correct in ruling it inadmissible.

Exhibit 61 contained the American National Standard specification for accident prevention signs. These standards were promulgated to suggest the design, application and use of warning signs and symbols so that the signs themselves would not cause or tend to cause injuries to workers or the public, or both. These were not standards suggesting manufacturers put warning signs on their machines or employers post warning signs but rather specifications for warning signs so that if they were posted they would not tend to distract the worker.

Defendant objected to the admission of these standards on the ground they were irrelevant. We agree. There was no problem here with a poorly designed warning sign which may have contributed to plaintiff's injury. The trial court was correct in ruling it inadmissible.

Exhibit 62 consisted of California statutes on safety devices and safeguards. These statutes placed certain duties upon employers. They were clearly irrelevant to the issues in the case before us. The court was correct in ruling them inadmissible in a case dealing with the duty of a manufacturer.

Exhibits 63 and 65 were never offered into evidence.

Exhibit 64 consisted of OSHA standards promulgated in 1974. Because they were not in existence at the time of the sale of the machine they were clearly irrelevant and the court was correct in ruling this exhibit inadmissible.

We have reviewed each of the issues presented for review by plaintiff's contentions and find no ruling of the trial court on those issues which requires reversal.

The case is—Affirmed.