[No. 2934–3. Division Three. November 27, 1979.]

ELISANDRO CANTU, *Appellant*, v. JOHN DEERE CO., ET AL, *Respondents*.

---

702

*Eugene G. Schuster* and *Critchlow & Williams,* for appellant.

*Ted Roy, Tim Weaver,* and *Hovis, Cockrill & Roy,* for respondents.

ROE, J.—This is a products liability case. Plaintiff suffered severe and disabling injuries in 1973, when his clothes became entangled in an exposed spinning power–take–off shaft of a John Deere tractor attached to a beet harvester cart. Plaintiff had been driving a truck, but when the tractor stopped, he walked across the muddy field to talk to the operator. His foot slipped from his position at the rear of the tractor causing his pant leg to catch in the spinning shaft, resulting in the injuries.

The tractor had been manufactured by defendants in 1953, 20 years before the accident. At the time of the man-

ufacture and delivery a shield covered the power–take–off. Plaintiff's expert witness admitted this guard would have prevented the accident had it been in place. Who took it off or for how long it had been left off was not resolved. It was somewhere on the farm.

Plaintiff argued that the equipment was defective and therefore not reasonably safe in two respects: (1) the warning was inadequate because it did not warn of the danger represented, and because once the shield was removed, the warning was removed with it; (2) the design was defective in that the manufacturer should have foreseen that the shield which was provided would, to an absolute certainty, have been removed and left off the equipment.

The jury rendered a verdict for the defendant. On appeal plaintiff urges three errors, each of which pertains to an instruction given or not given. We will discuss them seriatim.

I

Instruction No. 16[1] related to the reasonable expectations of the ordinary user. The main and unexcepted language of the instruction is taken verbatim from the opinion in *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975). The court added an additional limiting factor not found in the reported Washington cases, namely, "the standards used by the industry producing similar products."

Plaintiff objected to the inclusion of such language, stating:

---

[1]Instruction No. 16:

"A product is not reasonably safe when it is unsafe to an extent beyond that which would be reasonably contemplated by the ordinary user at the time it leaves the control of the defendant. In determining the reasonable expectations of the ordinary user, a number of factors may be considered. Among them are: the relative cost of the product, the gravity of the potential harm from the claimed defect, the cost and feasibility of eliminating or minimizing the risk, the standards used by the industry producing similar products and the intrinsic nature of the product."

I think that *standards used by the industry . . .* is *self-serving evidence* and should not be mentioned by the Court as relevant to the issue of defectiveness.

(Italics ours.)

Argument, but no authority, was given to the court why the inclusion of the phrase relating to "standards of the industry" was error.

 Liability is imposed if a product is not reasonably safe, that is, unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer. Thus, we evaluate the product in terms of reasonable consumer expectations. As stated at page 154 of *Tabert,* "In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered."

Plaintiff's brief refers to the "state of the art," which is sometimes confused with "standards of the industry." We believe the two phrases are not synonymous, and we limit our discussion to standards of the industry, customarily self–imposed by the manufacturer. This does not involve state of the art, which could be the same or conceivably a more demanding feasibility, but unrelated to other factors such as cost, gravity of harm, etc.

No Washington case was cited to support the use of the phrase "standards of the industry." Defendants argue that the Washington Supreme Court anticipated this limitation in language found in the *Tabert* opinion at page 154, stating, "The ordinary consumer evaluates a product in terms of safety, recognizing that virtually no product is or can be made absolutely safe." And further, "In other instances the nature of the product or the *nature of the claimed defect may make other factors relevant* to the issue." (Italics ours.)

Defendant argues that since the plaintiff's expert witness testified that the guard as originally manufactured was defective, that its removability was in violation of engineering standards, and that another type of guard (allegedly nonremovable) was available at the time of manufacture; that therefore plaintiff put the standards of the industry in

issue. Defendant's expert's testimony tended to rebut plaintiff's position. Thus, defendants urge the instruction was necessary for the jury to properly consider this evidence, particularly since there had been improvements made in the method of shielding power–take–offs in the past 20 years.

A similar thought is expressed in *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442, 447 (10th Cir. 1976), citing Restatement (Second) of Torts § 402A (1965). The court, in discussing whether a product is dangerous beyond the expectation of the ordinary consumer, said that state–of–the–art evidence helps to determine the expectations of the ordinary consumer. The consumer would not expect a Model T to have the safety features which are incorporated in the automobiles of today. A similar expectation applies to airplanes; that the ordinary consumer would not expect a plane made in 1952 to have the same safety features as one made in 1970.

Plaintiff relies upon *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530 (N.D. 1977), a belt dressing case, where the court rejected the *state–of–the–art* (not standards of the industry) evidence in an action on negligence, stating such evidence in an action predicated upon strict liability possesses even less probative value. The *Olson* case was decided July 27, 1977, prior to *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 570 P.2d 438 (1977) and *Seattle–First Nat'l Bank v. Tabert, supra,* which did not refer to it.

Standards–of–the–industry and state–of–the–art instructions are not strangers to products liability cases.

Colorado in its 1977 product liability legislation specifically rejected conformity with industry standards as a basis for a rebuttable presumption of non–negligence or non–defectiveness. Conformity, however, to the "state of the art" does create such a presumption. Col Rev Stat § 13–21–403(1). Kentucky, on the other hand, has created a rebuttable presumption that a product is not defective if its design or manufacturing or testing requirements conformed to generally recognized, prevailing standards or the state of the art at the time the product was designed

or manufactured. Ky Rev Stat, Ch. 411, § 3. Thus, the Kentucky presumption is tied to a general industry standard.

Arizona, Indiana, Nebraska, New Hampshire and Tennessee have each created affirmative defenses based on the "state of the art" in existence either at the time the product was designed, manufactured or sold. Ariz Rev Stat § 12–683; Ind House Bill No. 1396 § 4(b)(4); Neb Leg Bill 665 § 4; NH Rev Stat Ann, Ch. 507–D:2.

1 L. Frumer & M. Friedman, *Products Liability* § 6.01[1], at 70.66 n.15.1 (1979).

■ We do not hold that conformance with the standards or customs of the industry would create a rebuttable presumption that a product is not defective if its design, manufacturing and testing conform to the generally recognized, prevailing standards at the time the product was manufactured. However, we do hold that in a case where plaintiff with his evidence makes state of the art and standards of the industry an issue, the defendant is entitled to respond, and the instruction given herein was appropriate to assist the jury in resolving this issue.

## II

The second assignment of error by the plaintiff is the court's giving of instruction No. 17:

There is no duty of a manufacturer or distributor to warn of dangers which are open and obvious, to persons of the class expected to be exposed thereto.

In *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 479–80, 573 P.2d 785 (1978), decided subsequent to filing this appeal, the court stated:

It is, however, equally well recognized that a warning need not be given at all in instances where a danger is obvious or known. . . .

Where, as here, the dangers associated with the use of a [Coleman stove] cannot be said to be *clearly* latent, both the question of whether instructions or warnings are adequate to insure safe use of a product, as well as that of whether the dangers involved are so obvious or well known as to eliminate the necessity for detailed warnings, are for the trier of fact.

(Italics ours. Citations omitted.) Quoting *Haugen v. Minnesota Mining & Mfg. Co.*, 15 Wn. App. 379, 389, 550 P.2d 71 (1976), the *Haysom* court stated at page 480:

Virtually any tool on the market today, . . . may be dangerous to the ultimate user if used in an improper manner or for an unintended use. It is for the jury to determine whether the danger so presented is unreasonable in the absence of some warning or instruction by the manufacturer concerning safety precautions which should be taken to prevent injury.

The plaintiff alleged that there was no evidence to support an exception to the openness and obviousness of the danger, stating that it might have been open and obvious to the manufacturer, but there was no proof it was open and obvious to members of the class by which the product would be used. This included the farm workers. Plaintiff urged proof of that must be required before the defendant is entitled to the instruction and the evidence indicated the danger of the rotating shaft was not appreciated by the plaintiff and it presented an illusion of safety.

■ Actually, the instruction as given by the court was more favorable to the plaintiff than the cases might suggest. A limitation on the lack of duty of the manufacturer to warn of dangers which were open and obvious was expressed and limited to persons of the class expected to be exposed thereto. The danger here was not clearly latent. Thus, under *Haysom v. Coleman Lantern Co., supra,* it would present an issue for the jury.

It was further stated in *Lamon v. McDonnell Douglas Corp.*, 19 Wn. App. 515, 523, 576 P.2d 426 (1978), *aff'd,* 91 Wn.2d 345, 588 P.2d 1346 (1979), a case involving an alleged defective hatch cover in an airplane:

We recognize that there is no duty on the part of the manufacturer to give warning of a product–connected danger where the person who claims to be entitled to the warning knows of the danger. Where the product–connected danger is obvious or known, the manufacturer or seller has no duty to warn.

Support for instruction No. 17 is also found in *Estate of Ryder v. Kelly-Springfield Tire Co.*, 91 Wn.2d 111, 116, 587 P.2d 160 (1978).

Plaintiff testified that he knew there was no shield on the shaft. This was obvious. He knew that the shaft was turning; he knew that the shaft was dangerous and could injure him if he contacted it; he was an experienced farmhand with reasonable intelligence. There was no evidence that the appellant was deceived by the spinning shaft when he chose to climb on the back 'of the tractor. The plaintiff stated that he knew the shaft was spinning because it was "stopping the beets." He had driven the tractor. He denied that he knew that the spinning shaft could be dangerous to some extent, but he would not put his hand into a spinning shaft; that he knew that was not the thing to do; that he would not put his leg in the shaft. "I don't think anybody would." The reason he did it in this case was because he slipped off the bar. Whether he admitted he appreciated the danger or that he could be hurt was a question for the jury. His simple denial does not bind the trier of fact.

### III

The third assignment of error is that the court erred in refusing an instruction to the jury on comparative assumption of risk. The plaintiff did not initially prepare such an instruction. Plaintiff originally submitted a total bar instruction, his No. 8, similar to the court's No. 15,[2] stating that if the jury found the plaintiff knew of a specific and unreasonable danger associated with use of the product,

---

[2] Instruction No. 15:

"If you find that plaintiff has sustained his burden of proof as hereinabove described, it is no defense against his claim if he failed to discover or to guard against the possibility of a defect in the product.

"On the other hand, if you find that defendant has proved by a preponderance of the evidence that plaintiff actually knew of a specific and unreasonable danger associated with use of the product and, possessed of that actual knowledge, voluntarily and unreasonably exposed himself to that specific danger and that such exposure was a proximate cause of his injuries, then your verdict will be for defendant whether or not plaintiff has sustained his burden of proof."

and, possessed of that actual knowledge, voluntarily and unreasonably exposed himself to that specific danger and that such was the proximate cause of his injuries, then the verdict would be for the defendant.

Plaintiff's original instruction No. 8 cited *Haugen v. Minnesota Mining & Mfg. Co., supra,* and the language upon which he now complains was identical to that which he submitted and which was given by the court. *Haugen* involved the explosion of a grinding disc which damaged the eye of plaintiff. The court stated at page 384: "Assumption of risk is recognized as a defense in a strict liability case . . ." citing comment *n* of the Restatement (Second) of Torts § 402A (1965), relative to the instruction proposed by the plaintiff. Nor did plaintiff except to the giving of the court's instruction No. 15, which is practically identical to plaintiff's proposed instruction No. 8. During trial the trial court raised the issue of comparative assumption of risk on its own volition. Some discussion indicated that it would not give one. Plaintiff then prepared one but did not except to the failure to give it.[3] To permit this now to be a basis of error would be to permit the plaintiff to submit conflicting instructions, not object to the giving of one and refusing to give the other, and then claim it was error on appeal.

█ It is the duty of the counsel at trial to advise the court of its errors so that the trial court may correct them.

---

[3]Plaintiff's third additional instruction No. 9:

"Assumption of the risk occurs if a party actually knows of a specific and unreasonable danger associated with use of a product and, possessed of that actual knowledge, voluntary [sic] and unreasonably exposed himself to that danger by use of the product.

"The burden of proof that plaintiff assumed a risk in this case is on defendant.

"If you find assumption of the risk on plaintiff's part as defined in the foregoing instruction, you must determine the degree of such assumption of the risk expressed as a percentage attirbutable [sic] to the person claiming such injury or damage. The Court will furnish you a special verdict form for this purpose. Your answers to the questions in the special verdict form will furnish the basis by which the Court will reduce the amount of any damages you find to have been sustained by a party who assumed the risk, by the percentage of such assumption."

If the plaintiff had provided authorities, possibly the trial court would have given the comparative assumption of risk instruction. *Memel v. Reimer,* 85 Wn.2d 685, 687, 538 P.2d 517 (1975), citing *Moore v. Mayfair Tavern, Inc.,* 75 Wn.2d 401, 406–07, 451 P.2d 669 (1969), states:

> [T]he purpose of the rule requiring a party to except [to instructions] . . . is to put upon counsel the duty to use his best efforts to keep a trial free from error, and to this end to give the court an adequate statement of his position upon all matters upon which he asks the court to make a ruling. If a trial court then rejects the contention, there may be a just grievance for which an appeal is the only remedy; but an appeal is not a device for trying out new theories or improving on the trial below.

Thus, there is no error which would justify reversal on appeal. In reaching this conclusion we are aware of the statement in *Teagle v. Fischer & Porter Co., supra* at 158:

> [I]f the trier of fact found the plaintiff had voluntarily and unreasonably proceeded to encounter a known danger, the adoption of comparative negligence in this jurisdiction, *see* RCW 4.22.010, renders the plaintiff's conduct a damage–reducing factor only.

This was mentioned with approval in *Little v. PPG Indus., Inc.,* 92 Wn.2d 118, 126 n.5, 594 P.2d 911 (1979), as well as in *Berry v. Coleman Sys. Co.,* 23 Wn. App. 622, 630, 596 P.2d 1365, *review denied,* 92 Wn.2d 1026 (1979).[4]

The judgment is affirmed.

---

[4]We are mindful of the changes made by the trial judge in a plaintiff–prepared typewritten order which stated that the court was fully and completely advised by the plaintiff of the proposed theory. The trial judge found only "that after extensive discussion the plaintiff's failure to except to the giving of instruction No. 15 closely followed his original position which results in that instruction becoming the law of the case." *Tuthill v. Palermo,* 14 Wn. App. 781, 545 P.2d 588 (1976).

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied December 18, 1979.

Review denied by Supreme Court February 15, 1980.