[No. 49590-4. En Banc. July 5, 1984.]

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN
MELVIN E. LENHARDT, ET AL, *Appellees,* V. FORD
MOTOR COMPANY, *Appellant.*

*Merrick, Hofstedt & Lindsey, P.S.,* by *James M. Lindsey, Jr.,* and *Gray, Plant, Mooty, Mooty & Bennett,* by *Richard A. Bowman* and *Hildy Bowbeer,* for appellant.

*William J. McDowell* and *Nathan G. Richardson, Jr.,* for appellees.

BRACHTENBACH, J.—The question in this case was certified to us, pursuant to RCW 2.60, by the Ninth Circuit Court of Appeals. The question certified is:

> Under the products liability law of the State of Washington governing an action arising from injuries incurred on January 8, 1979, are the design and performance characteristics of products similar to the allegedly defective product manufactured by other makers appropriate factors to be considered in determining the reasonable expectations of the ordinary consumer?

In its order certifying this question the Ninth Circuit explicitly stated that we are not bound by the question as phrased and could formulate the question as we deem appropriate. We accept this invitation.

After reviewing the record we believe the question we must answer is the following:

> In a strict liability cause of action arising prior to the effective date of the Washington Tort Reform Act, codified in RCW 7.72.010 *et seq.,* is evidence of compliance with industry customs and standards always admissible as a relevant factor in evaluating the reasonable expectation of the ordinary consumer.

We answer no.

The facts as certified to us are as follows: The federal court plaintiff, Melvin Lenhardt, was injured when his Ford van slipped into reverse after he left the motor running, put the vehicle in park and exited the vehicle momentarily. His

injuries occurred when he tried to stop the runaway vehicle. Lenhardt sued Ford Motor Company alleging strict liability for design defects in the transmission system. At trial, Lenhardt's expert witness testified concerning the defective design of the individual components and the transmission system as a whole. He opined that minor changes in two components would eliminate the dangerous characteristics of the transmission system. A major portion of his testimony was predicated upon internal memorandums of Ford Motor Company. At no point, however, did he compare or discuss transmissions of other manufacturers.

In rebuttal, the federal defendant, Ford Motor Company, attempted to introduce evidence of the custom of the industry as to transmission design. The proffered evidence consisted of testimony from present or former Ford employees that other manufacturers used similarly designed components, that their transmission systems were similarly designed, and that other manufacturers' cars have transmissions that will slip from park to reverse. The federal trial court ruled that this evidence was not admissible because it was not relevant concerning the reasonable expectation of the ordinary consumer. The jury returned a verdict for Lenhardt and Ford appealed, citing this evidentiary ruling as error.

At the outset we must distinguish between two types of evidence that may be introduced in a product liability action, state of the art evidence and evidence of industry custom. These concepts are not always synonymous and, as such, involve different types of evidence. *Cantu v. John Deere Co.*, 24 Wn. App. 701, 603 P.2d 839 (1979). The former relates to the technological feasibility of alternative safer designs in existence at the time the product was originally manufactured while the latter refers to a practice or custom regarding a particular design or manufacturing technique utilized by most manufacturers in that industry. *Cf. Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743 (Tex. 1980); *Chown v. USM Corp.*, 297 N.W.2d 218 (Iowa 1980). In some factual situations the concepts may merge;

however, in this case the distinction is appropriate. Accordingly, the only issue before us is the admissibility of industry custom when offered by the defendant as evidence of the reasonable expectation of the ordinary consumer.

In *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969) this court adopted the Restatement (Second) of Torts § 402A (1965) doctrine of strict liability as a basis for a manufacturer's liability. In *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975) we applied section 402A to a case alleging defective design, wherein we held:

> Thus, we hold that liability is imposed under section 402A if a product is not reasonably safe. This means that it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer. This evaluation of the product in terms of the reasonable expectations of the ordinary consumer allows the trier of the fact to take into account the intrinsic nature of the product. The purchaser of a Volkswagen cannot reasonably expect the same degree of safety as would the buyer of the much more expensive Cadillac. It must be borne in mind that we are dealing with a relative, not an absolute concept.
>
> In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

*Tabert,* at 154. Ford Motor Company argues that the custom of the industry, represented by the design choices of other manufacturers, is a relevant factor in determining the reasonable expectation of the ordinary consumer. We disagree.

In order to recover under a theory of strict liability, a plaintiff need not prove that a product is defective as a separate matter. *Tabert,* at 154. *Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 411, 553 P.2d 107 (1976). Recov-

ery is allowed if the jury determines that the product is dangerous to an extent beyond that which is contemplated by the ordinary consumer. *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 113, 587 P.2d 160, 16 A.L.R.4th 129 (1978). The consumer has a reasonable expectation of buying a product which is reasonably safe; if there is something in the design which does not meet that expectation the design is necessarily defective. *Wiseman v. Goodyear Tire & Rubber Co.,* 29 Wn. App. 883, 631 P.2d 976 (1981).

As has been made clear in numerous cases, our jurisdiction utilizes a buyer oriented approach, and the focus is on the buyer's expectation. Thus, our rule of strict liability focuses attention upon the product and not upon the actions of the seller or manufacturer. *Estate of Ryder v. Kelly–Springfield Tire Co., supra; Little v. PPG Indus., Inc.,* 92 Wn.2d 118, 594 P.2d 911 (1979). Introducing evidence of industry and/or manufacturer's customs and practices shifts the jury's focus from what the consumer expects to what the manufacturers are doing. By focusing the jury's attention on the custom of the industry, implicitly the jury's attention is focused on the defendant's design choice and the reasonableness of that choice. In effect, such evidence incorporates negligence concepts and the seller oriented approach we rejected in *Estate of Ryder v. Kelly–Springfield Tire Co.* This is not appropriate in actions alleging strict liability under section 402A.

> The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product.

*Ulmer v. Ford Motor Co., supra* at 531, quoting Restatement (Second) of Torts § 402A, comment *a.*

> In strict liability the plaintiff's proof concerns the condition (dangerous) of a product which is designed or manufactured in a particular way. In negligence the proof concerns the reasonableness of the manufacturer's conduct in designing and selling the product as he did. *Phil-*

*lips v. Kimwood Machine Company,* [269 Or. 485, 493–95, 525 P.2d 1033, 1037 (1974)].

In strict liability the plaintiff takes the design as it was finalized in the finished product and shows it was both dangerous and that it was unreasonable to subject the user to this danger because the user would not contemplate the danger in the normal and innocent use of the product or consumption of the product. In negligence the plaintiff shows the manufacturer was unreasonable in designing the product as he did.

*Aller v. Rodgers Mach. Mfg. Co.,* 268 N.W.2d 830, 835 (Iowa 1978).

Although in Iowa the plaintiff must show the design is unreasonably dangerous to recover, the principle enunciated in *Aller* is in accord with the strict liability principles of this jurisdiction. The plaintiff takes the design as it was finalized in the finished product and shows it was not reasonably safe because the user would not contemplate the danger in the normal and innocent use of the product or consumption of the product. The liability of the manufacturer is measured solely by the characteristics of the product he has produced rather than his behavior and, therefore, strict liability does not sound in negligence. *Seay v. Chrysler Corp.,* 93 Wn.2d 319, 328, 609 P.2d 1382, 9 A.L.R.4th 625 (1980) (Brachtenbach, J., concurring in the dissent); *accord, Seay v. Chrysler Corp.,* at 323.

In that the reasonableness of the defendant's conduct is irrelevant in strict liability cases, industry custom and standards, which form the basis of the defendant's conduct, are equally irrelevant. Strict liability is predicated upon a no–fault concept and evidence that other manufacturers do the same thing as the defendant introduces concepts of fault that are not relevant to the reasonable expectation of the ordinary consumer.

This opinion should not be understood to mean that evidence of industry custom or standard is never admissible in a strict liability action. If the plaintiff presents evidence that puts in issue the custom of the industry or feasibility of alternative design the defendant should be allowed to

meet that evidence. *Cf. Connor v. Skagit Corp.*, 99 Wn.2d 709, 664 P.2d 1208 (1983); *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 588 P.2d 1346 (1979); *Cantu v. John Deere Co., supra.* But when a plaintiff establishes at trial that a particular design allows a certain event to occur and alleges that event is not reasonably safe based upon the reasonable consumer expectation concerning that product, the defendant may not introduce evidence that his design comports with the design of other manufacturers, *i.e.,* industry custom, and, therefore, is reasonably safe because the other designs allow the same event to occur. If a product as designed is not reasonably safe liability attaches and a defendant is liable no matter how reasonable his conduct. *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 159, 570 P.2d 438 (1977).

Ford Motor Company points to the new product liability act which makes evidence of industry customs a factor that may be considered by the trier of fact. *See* RCW 7.72-.050(1). While the defendant admits that the statute is not binding in this case, *see* Laws of 1981, 1st Ex. Sess., ch. 27, § 15, p. 119; Senate Journal, 47th Legislature (1981), at 637, they argue that the act reflects a public policy statement which should guide the formulation of judicial policy. *South v. A.B. Chance Co.*, 96 Wn.2d 439, 441, 635 P.2d 728 (1981). We continue to adhere to the statement made in *South* but believe it is not appropriate in this case.

The new products liability act made modifications in the existing product liability law of the State of Washington. RCW 7.72.020(1). One of the more significant changes adopted by the Legislature was to change the standard of liability for design and warning/instruction defects. The Legislature felt that the balancing factors announced in *Tabert* and *Teagle* had implicitly created a negligence standard for strict liability causes of action. Therefore, the Legislature adopted negligence standards as the standard of liability for design and warning/instruction defects under the new act. *See* RCW 7.72.030(1)(a), (b); *see also* Senate Journal, 47th Legislature (1981), at 624–25. In accord with

this change, the Legislature adopted evidentiary rules that allow the jury to consider the greatest amount of evidence in evaluating the manufacturer's exercise of care. *See* Senate Journal, at 624.

This change, however, is not consistent with the products liability law that is applicable to this case. The manufacturer's exercise of care and conversely its negligence are not matters that the jury need consider. As previously explained, the jury focus is not on the conduct of the manufacturer but is on the product and whether that product is reasonably safe from the viewpoint of what a reasonable consumer would expect.

We hold that evidence of industry custom is not always admissible in a product liability cause of action that arises before the effective date of RCW 7.72.010 *et seq.*

WILLIAMS, C.J., ROSELLINI, UTTER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J. (dissenting)—I dissent, with all due respect, since I cannot determine if the majority has answered the spirit of the question. Specifically, we are asked if characteristics of similar products made by manufacturers other than the defendant manufacturer are "appropriate" factors to be weighed by the jury in determining the relative safety of the injury–causing product, in other words, if industry custom is relevant to consumer expectations. What the majority appears to decide is that evidence of compliance with industry custom is "not always admissible" as a relevant factor in evaluating the ordinary consumer's reasonable expectations of product safety. The implication is that although such evidence is probative of consumer expectations, its admissibility is subject to trial court discretion. If that is the majority's proposition, I agree. However, I do not agree that the relevance of industry custom evidence depends solely on plaintiff's tactical decision to raise the feasibility of an alternate, presumably safer, design. It is relevant, instead, because industry custom aids the jury in

assessing the relative harms and benefits of a product's design. What degree of safety the consumer contemplates in regard to a particular product is inherently a reasonableness determination. To evaluate reasonableness, the trier of fact evaluates the product's safety characteristics against the product's utility. I would, therefore, respond to the certified question by finding industry custom evidence relevant to consumer expectations.

The majority concludes that the public policy expressed in the tort and product liability reform act of 1981, RCW 7.72, provides no guidance. I disagree. RCW 7.72.050(1) allows evidence of custom in the product seller's industry to be considered by the trier of fact. The legislative approval of industry custom evidence in product liability cases rests, in some part, on the assumption that the consumer expectations test previously articulated by this court in *Seattle-First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975) announced a balancing test closely related to a cost/benefit analysis fundamental to a determination of negligence. *See* Washington State Senate Select Comm. on Tort & Prod. Liability Reform, Final Report 17 (1981) (hereinafter cited as Final Report). In defining "unreasonably unsafe" in product design cases, the Legislature purported to make explicit the balancing test that was implicitly followed under strict liability law. Final Report, at 17–18. The Washington State Senate's Select Committee on Tort and Product Liability Reform expressed the view that, in balancing various factors, the trier of fact should take into account the greatest amount of evidence available. Final Report, at 39–40. This policy judgment makes good sense whether considering product liability under case law or the new act. I see no reason to strain the rationale of our prior cases, and now disavow the balancing test of *Tabert,* to reach a result contrary to the product liability act.

The new product liability act retained the consumer expectations test as a factor in determining liability for design defect because it was believed to be harmonious with the act's balancing test used for determining reasonable

safety. Final Report, at 35–36. Our decisions support that legislative judgment. Under *Tabert,* determining the reasonable expectations of the ordinary consumer requires balancing various factors such as the product's cost, the gravity of harm, and the cost and feasibility of eliminating or minimizing the risk to the consumer. *Tabert,* at 154; *see Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 588 P.2d 1346 (1979); *Wagner v. Flightcraft, Inc.,* 31 Wn. App. 558, 643 P.2d 906 (1982). Because the function of this balancing is to evaluate the reasonableness of the degree of safety the product possesses to the ordinary user, the test is comparable to a negligence analysis. *See generally* Birnbaum, *Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence,* 33 Vand. L. Rev. 593 (1980); Note, *Strict Liability in Tort: Is It Applicable to Design Defect?,* 20 Washburn L.J. 600 (1981). As in a negligence action, the heart of the jury inquiry is reasonableness. The ordinary consumer is deemed to expect not absolute safety, but reasonable safety based on consideration of the benefits the product offers and the potential harm it poses. The jury's function is to decide what degree of risk society is willing to accept to enjoy the benefit of the product before the manufacturer will be found liable for the harm caused.

This balancing of risk and utility in a strict liability case does not transform strict liability into negligence. *See Little v. PPG Indus., Inc.,* 92 Wn.2d 118, 122, 594 P.2d 911 (1979). Under our case law, the plaintiff in a strict liability action does not have to prove any negligent conduct on the part of the manufacturer. The only pertinent inquiry assesses the relationship of the product's relative safety to what the consumer may reasonably expect.

The jury's balancing of the risks and benefits inherent in the design includes evaluating whether it is feasible to improve the safety features of the product, and whether that enhanced safety is something the ordinary consumer would expect to find based on the "cost" of providing the extra safety. A major aspect of the cost to the consumer

may be the impact that greater safety has on the product's utility. *See Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743 (Tex. 1980). Industry custom is probative of the cost and technological feasibility of improved safety, the loss of utility that greater safety incurs, and the relative success in reducing the potential harm. *Reed v. Tiffin Motor Homes, Inc.,* 697 F.2d 1192 (4th Cir. 1982); *Boatland of Houston, Inc. v. Bailey, supra.* Because the standard of design defectiveness is premised on the reasonableness of the design, industry custom has some bearing on the feasibility factors that the jury considers.

Evidence of compliance with industry custom should not, however, establish a conclusive defense. Industry standards reflect only the industry consensus on the proper balancing of the beneficial aspects and the potential harm in the design. The jury remains free to reject that balance and find the entire industry's products unsafe. *Accord, Back v. Wickes Corp.,* 375 Mass. 633, 378 N.E.2d 964 (1978); *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978).

The consumer expectations test has been criticized, as has been the requirement of unreasonable danger, by commentators who suggest that the test perpetuates poor manufacturing standards. *See, e.g.,* J. Beasley, *Products Liability and the Unreasonably Dangerous Requirement* 399 (1981). The theory is that a pervasive "dangerous" design becomes "expected" by consumers so that it cannot be found unreasonably dangerous. This criticism points out the inequity of a consumer expectation test that asks only whether the ordinary consumer contemplated this harm. The better inquiry is whether the risk of harm is greater than the ordinary consumer is willing to bear because the benefits of having the product with the "defect" do not outweigh the costs of providing a safer product. Under this standard, the pervasiveness of the defective design will not decide the outcome. The jury will simply consider the gravity of the harm and the beneficial aspects, rejecting any design, however common, that presents an unreasonable

risk.

Even if one accepts the majority's proposition that only a plaintiff may make industry custom relevant by resting the claim on a feasibility theory, this case meets that criterion. Plaintiff Lenhardt presented testimony that an inexpensive design change would correct the transmission defect. In substance, plaintiff claims that it is feasible to design a safer transmission. The jury is entitled to weigh that claim, to hear evidence on both sides of the issue, and to evaluate the impact of the feasibility claim on the ultimate issue of whether the product was unreasonably unsafe as designed.

I would hold that industry custom is probative of a product's reasonable safety, and thus relevant to what the ordinary consumer expects.

DOLLIVER, J., concurs with DIMMICK, J.